UNITED STATES, Appellee

v

WILLIAM D. J. MOOREHEAD, Commissaryman First Class, U. S. Coast Guard, Appellant

20 USCMA 574, 44 CMR 4

*Lieutenant Joseph R. Sahid,* USCGR, argued the cause for Appellant, Accused.

*Lieutenant Commander James F. Meade,* USCG, argued the cause for Appellee, United States.

## Opinion of the Court

DARDEN, Judge:

In this case the Court considers an issue the General Counsel of the Department of Transportation certified to us. The question is:

Was the Court of Military Review correct in determining that the Coast Guard's method of assigning a military judge to a general court-martial complies with the requirements of Article 26(c), Uniform Code of Military Justice?

A majority of a divided Court of Military Review determined that the Coast Guard method of assigning a military judge to a general court-martial complies with Article 26(c), Uniform Code of Military Justice, 10 USC § 826. This section provides:

"(c) The military judge of a general court-martial shall be designated by the Judge Advocate General, or his designee, of the armed force of which the military judge is a member for detail by the convening authority, and, unless the court-martial was convened by the President or the Secretary concerned, neither the convening authority nor any member of his staff shall prepare or review any report concerning the effectiveness, fitness, or efficiency of the military judge so detailed, which relates to his performance of duty as a military judge. A commissioned officer who is certified to be qualified for duty as a military judge of a general court-martial may perform such duties only when he is assigned and directly responsible to the Judge Advocate General, or his designee, of the armed force of which the military judge is a member and may perform duties of a judicial or nonjudicial nature other than those relating to his primary duty as a military judge of a general court-martial when such duties are assigned to him by or with the approval of that Judge Advocate General or his designee."

A Coast Guard general court-martial tried Commissaryman First Class William D. J. Moorehead on December 11–12, 1969, and, after he pleaded not guilty, convicted him of absence without leave and of being drunk on duty, and found him not guilty of larceny. Execution of his sentence to reduction in grade, confinement at hard labor for four months, and forfeiture of $50.00 per month for the same period was deferred pending appellate review.

The court-martial in question was convened by the Commander of the Eleventh Coast Guard District at Long Beach, California. The Coast Guard Chief Counsel, under a designation of authority from the General Counsel of the Department of Transportation, ordered Lieutenant Commander Robert Finan to preside as military judge.

At the time of the trial, Lieutenant Commander Finan was permanently assigned to the Legislation and Regulations Division, one of the six subdivisions within the office of the Chief Counsel of the United States Coast Guard. The Chief of the Legislation

575

and Regulations Division was Captain W. J. Kirkley, who was responsible for preparing fitness reports on officers in his Division, including Lieutenant Commander Finan. The Coast Guard Chief Counsel, Rear Admiral W. L. Morrison, is the reviewing officer for such reports.

At the trial, the defense counsel unsuccessfully challenged Judge Finan's eligibility to function. Judge Finan overruled the objection and proceeded to find the accused guilty of two charges and specifications.

We must decide three challenges to Judge Finan's qualifications. They are whether (1) the Chief Counsel of the Coast Guard was a valid designee under Article 26(c), Uniform Code of Military Justice, (2) Judge Finan was assigned and directly responsible to the designee of the Judge Advocate General, and (3) service as a military judge of a general court-martial was Judge Finan's primary duty.

The argument that the Coast Guard Chief Counsel could not be a designee centers on the thought that in enacting Article 26(c), Congress was attempting not only to insulate general courts-martial judges from the convening authority of the court of which such a judge functions but also from the influence of line officers generally.

The Judge Advocate General of the Coast Guard is the General Counsel of the Department of Transportation. Article 1, Uniform Code of Military Justice, 10 USC § 801. The General Counsel designated the Coast Guard Chief Counsel as a person authorized to assign judges of general courts-martial under Article 26(c) of the Code. (Letter issued July 14, 1969.) The organizational relationship of the Chief Counsel of the Coast Guard to the Commandant of the Coast Guard is somewhat different from the relationship of the Judge Advocates General of the military departments to the military Chiefs of those departments.

The Judge Advocates General of the military departments are selected by the President rather than the military Chiefs of those departments. Moreover the military Chiefs of those departments are not statutorily designated as convening authorities. In contrast, the Coast Guard Chief Counsel is selected by the chief military officer of the Coast Guard, the Commandant, who is a potential convening authority. Appellate defense counsel suggests the statute was designed to avoid having any military officer who could convene a general court-martial in the chain of command above the military judge. In this case, however, we deal not with the questions that could arise if the Commandant were the convening authority. The statutory restriction is that "neither the convening authority nor any member of his staff shall prepare or review any report concerning the effectiveness, fitness, or efficiency" of the military judge assigned by the designee of the Judge Advocate General. In the case before us, we have no allegation that the convening authority or any member of his staff participated in preparing or reviewing Judge Finan's fitness report. We find nothing specific in the Military Justice Act of 1968 or its legislative history to support a holding that the Chief Counsel of the Coast Guard is a prohibited designee of the General Counsel of the Department of Transportation.

The language of what is now Article 26(c) of the Code was suggested by the Department of Defense in its report to the Senate Committee on Armed Services on S 2009, 90th Congress.[1] As originally introduced, S 2009 proposed an Article 26(c) that read:

"(c) A commissioned officer who is certified to be qualified for duty as a military judge shall be assigned and directly responsible to the Judge Advocate General, or his designee, of the armed force of

[1] See letter and enclosure of July 1, 1968, from the Secretary of the Army to the Chairman of the Senate Committee on Armed Services, on file in the Senate Committee on Armed Services.

which the military judge is a member. A military judge shall perform such duties of a judicial nature other than those relating to his primary duty of military judge of a court-martial whenever such duties are assigned to him by or with the approval of the appropriate Judge Advocate General. Duties of a nonjudicial nature may not be assigned to any military judge except with the approval of the appropriate Judge Advocate General, and approval shall be given only in cases in which the appropriate Judge Advocate General has determined that the performance of nonjudicial duties will not interfere with or adversely affect the performance of the judicial duties of such military judge. Except in the case of a court-martial convened by the President or the Secretary concerned, neither the convening authority nor any member of the staff of the convening authority shall prepare or review any report concerning the effectiveness, fitness, or efficiency of any military judge designated by the appropriate Judge Advocate General for detail by such convening authority."

In the report referred to above the Secretary of the Army, as representative of the Department of Defense, commented that the bill placed:

". . . [A]ll military judges, both for general and special courts-martial, in the trial judiciary. This is not favored. Military judges of special courts-martial would be needed by the Army and Navy to perform nonjudicial matters in addition to their courtroom duties."

After it pointed out that S 2009 would allow only a Judge Advocate General to authorize military judges to perform nonjudicial duties or judicial duties not related to their primary duty as military judge, the departmental report then suggested:

". . . A designee of The Judge Advocate General should be allowed to perform this function, since in many cases it would be too time-consuming to obtain authorization from The Judge Advocate General. The Chief Judge of the circuit or the area would be an appropriate designee. It is also recommended that military judges of special courts-martial not be subject to the limitations on assignment and duty governing the trial judiciary."

This report recommended enactment of a substitute bill, a draft of which it enclosed. In the part with which we are now concerned, this draft proposed language for Article 26(c) that was used word for word by the Senate Committee on Armed Services when it amended HR 15971, 90th Congress, to enact the general principles of a trial judiciary for general courts-martial judges.[2]

Congress selected the word "designee" without attaching any modifiers. ██ This does not necessarily mean that the General Counsel of the Department of Transportation could designate any person to discharge his Article 26(c)

---

[2] "Proposed new subsection (c) will enact into law the general principles of the 'independent field judiciary' system already adopted administratively by some of the armed services, while leaving to the services a desirable degree of flexibility for implementing improvements in detail which may be indicated by additional experience. The intent is to provide for the establishment within each service of an independent judiciary composed of military judges certified for duty on general courts-martial, who are assigned directly to the Judge Advocate General of the service and are responsible only to him or his designees for direction and fitness ratings. Rules for designating and detailing military judges of special courts-martial are left subject to regulations of the Secretary concerned. This will permit the establishment of special lists of junior judge advocates who can be utilized for other duties while serving as military judges of special courts-martial in preparation for later assignment to general courts-martial." Senate Report No. 1601, 90th Congress, Second Session (1968).

responsibilities, but the Chief Counsel of the Coast Guard is not, solely because he also has responsibilities to the Commandant of the Coast Guard, a prohibited designee. That Congress desired military judges of general courts-martial to be primarily controlled by officials responsible for military justice instead of officials primarily concerned with military operations seems abundantly clear. But perhaps Congress relied on the assumption that the General Counsel of the Department of Transportation, like the Judge Advocates General of the Army, Navy, and Air Force, would be sufficiently aware of the importance of protection for military judges not to delegate his authority in a manner that undermined this protection. We therefore do not agree with the argument that the Chief Counsel of the Coast Guard could not be the designee of the General Counsel of the Department of Transportation.

The second ground for challenge of Judge Finan is that he was not assigned and directly responsible to the designee of the Judge Advocate General. Judge Finan was ordered to duty under the Chief Counsel of the Coast Guard. The Chief Counsel detailed him to work under the supervision of Captain Kirkley, the Chief of the Legislation and Regulations Division. If we accepted the defense argument that for this reason Judge Finan was not directly responsible to the Coast Guard Chief Counsel, then the general courts-martial judges of the Army, whose trial judiciary system is the paradigm case, apparently could not be considered directly responsible to the designee of the Judge Advocate General of the Army. Under the Army arrangement, two levels of administration, the Chief of the Trial Judiciary and an area military judge, function between the Judge Advocate General and an individual judge.[3] We infer that the "assigned and directly responsible to" language was intended to subject officers functioning as military judges of general courts-martial to the control of legal officers instead of to line commanders. So long as Judge Finan was assigned in a manner that permitted the designee of the Coast Guard Judge Advocate General to determine the duty the judge performed, we believe this part of the statute is complied with.

The third of the three arguments against Judge Finan's qualifications stresses his not having primary duties as a military judge. At the trial, Judge Finan conceded it was "obvious" that his primary duty was not of military judge. Article 26(c) indisputably exempts judges of special courts-martial from what the Senate report[4] but not the bill, referred to as the trial judiciary. The designee of a Judge Advocate General can permit performance by a general court-martial judge of duties of a judicial or nonjudicial nature other than those relating to his primary duty as military judge of a general court-martial.

One of the precursors of S 2009 and Article 26(c) was S 745 of the 89th Congress, which proposed to establish by law the use of a field, or trial, judiciary and to specify by statute details concerning the assignment and duties of the military judge. See Joint Hearings before the Subcommittee on Constitutional Rights of the Committee on the Judiciary and a Special Subcommittee of the Committee on Armed Services, United States Senate, 89th Congress, Second Session (1966), Part 2 (Appendix A), at pages 464–474, on S 745. "Independent trial judiciary" has no defined meaning in law but the term has been associated with a system initiated by the Army and later adopted by the Navy. Under this system, the judges of general courts-martial were responsible to the Judge Advocate General of their service. These judges functioned as such more or less on a full-time basis and they were not subordinate to the officers who con-

---

[3] See Army Regulation 27–10, paragraphs 9–2(*i*) and 9–6.

[4] Senate Report No. 1601, 90th Congress, Second Session (1968).

vened general courts-martial. See Hearings before the Subcommittee on Constitutional Rights of the Committee on the Judiciary, United States Senate, pursuant to S Res 260, 87th Congress, Second Session (1962), at pages 838–839.

In its report on S 745, 89th Congress, the Department of Defense objected to the enactment of a statute requiring the use of a trial judiciary, pointing out that the Air Force had not experienced the need for such a system and suggesting that in a war or emergency the statutory provision might pose insurmountable problems. Joint Hearings, supra, Part 2 (Appendix A), at page 471. The Department of the Treasury, reporting for the Coast Guard, indicated that "The Coast Guard, as the smallest of the Armed Forces, has not found it necessary to establish judiciary systems in which personnel are assigned to full-time duty in connection with the conduct of courts-martial. Experience for the past 5 years in the Coast Guard indicates that the maximum number of general courts-martial in a single year for which a law officer was required was six. This small number would not require the assignment of a military judge to full-time judicial duties which the proposed bill would require for each armed force. The Department much prefers the latitude presently allowed by the Uniform Code which permits each armed force to determine a method of administration of the Code suitable to its size and needs." Joint Hearings, supra, Part 2 (Appendix A), at page 473.

After hearings on S 745 and other bills related to military justice, the Chairman of the Subcommittee conducting these hearings submitted a questionnaire to the Department of Defense to develop additional information about the bills. Joint Hearings, supra, Part 3 (Appendix B), at page 865. Among the questions submitted were several relating to S 745 and the field judiciary. Id., at page 866. Among them were:

"(a) Except for the unforeseen circumstances produced by wartime, what other situations can be foreseen in which the legislative creation of a field judiciary would prove too inflexible?

"(b) Would including an exception for 'time of war' or 'national emergency' provide the desired flexibility?

"(c) Assuming that the legislative creation of a field judiciary is considered necessary, what changes or additional provisions would you suggest to overcome the problems or objections set forth above?"

In its answer to question "c" above the Army recommended a draft of legislation. Id., at page 908. This draft was similar to the draft referred to earlier that was forwarded by the Department of Defense in its report on S 2009 of the 90th Congress. In its answer to question "c" above the Navy replied, "The principal suggestion would be the deletion of any statutory restrictions upon the duties which may be assigned to 'military judges' (Section 3, subparagraph (d) of S 745)." Id., at page 936. (Subparagraph (d) of section 3 of S 745, would have prohibited assignment of duties of a nonjudicial nature to a military judge except in time of war, and then only with the approval of the appropriate Judge Advocate General.) The Air Force response to the question about recommended changes was "We would add only that one very obvious circumstance in which the 'field judiciary' would be inappropriately inflexible, would be a reduction in the number of trials in any of the other services to the point where the field judiciary would be prohibitively expensive in manpower and money, as in the present situation in the Air Force." Id., at page 961.

The Government and the majority of the Coast Guard Court of Military Review assumed that Congress intended to grant an exemption to the Coast Guard when it legislated Article 26(c). If primary duty means no more than that the duty comes first for the time an officer is trying a case,

the words really serve no purpose. Even before the Military Justice Act of 1968, judging was primary duty in that sense of the term. Yet Congress did not in Article 26(c) provide any different treatment for the Coast Guard than for the other armed forces, including the Air Force, which also had had reservations about earlier bills to enact some features of the trial judiciary system. As the defense reminds us, all the other armed forces have proceeded to implement the Military Justice Act of 1968 by placing officers currently functioning as military judges of general courts in a separate assignment category and by detailing judges from this category to fill requirements for general courts-martial judges as these requirements arise.

The defect we find in the current Coast Guard arrangement is the random or one-time use of ■ military judges in the infrequent general courts-martial that armed force experiences and the lack of even a limited concentration on trial work. For the Coast Guard Chief Counsel simply to declare that a qualified military judge has as his primary duty the trying of general courts-martial could not make such duty primary in the sense that it required most of the judge's time. But if the Coast Guard Chief Counsel designated one officer to try whatever general courts-martial occurred during the time that officer was designated, and if that same officer also was used to try special courts-martial, such an arrangement would appear to comply with congressional intent.

A military judge does not have the primary duty of functioning in the trial of general courts-martial unless he is in a separate assignment category in which he is designated to function in the trial of general courts convened during the period of that assignment.

Since under the arrangement in effect at the time of this trial no Coast Guard military judge had the primary duty of trying general courts-martial cases, we find that Article 26(c) was not complied with. Accordingly, we answer the certified issue in the negative.

The decision of the Court of Military Review is reversed, and the record of trial is returned to the General Counsel of the Department of Transportation. Another trial may be ordered.

Chief Judge QUINN and Senior Judge FERGUSON concur.