UNITED STATES, Appellant,

v.

James T. BECKERMANN, Chief
Warrant Officer, U.S. Coast
Guard, Appellee.

No. 59,986.
CG 896.

U.S. Court of Military Appeals.

Jan. 9, 1989.

For the United States: *Lieutenant Commander Arthur R. Butler* (argued).

For the Accused: *Eugene R. Fidell,* Esq. (argued); *Lieutenant Commander Robert Bruce* (on brief); *Lieutenant Commander James Collin.*

*Opinion of the Court*

EVERETT, Chief Judge:

Chief Warrant Officer Beckermann was tried by a general court-martial composed of officer members and, contrary to his pleas, was convicted of various offenses involving larceny, fraud, and conduct unbecoming an officer, in violation of Articles 121, 132, and 133 of the Uniform Code of Military Justice, 10 USC §§ 921, 932, and 933, respectively. The sentence adjudged was a reprimand, loss of 100 numbers, and a fine of $37,988.19, with the provision that he be confined for 15 months if the fine was not paid. After disapproving part of one specification, the convening authority approved the findings; and he approved the sentence except for reducing the fine to $15,000 and disapproving the alternative punishment of 15 months' confinement.

The record of trial was referred to the United States Coast Guard Court of Military Review pursuant to Article 69(a), UCMJ, 10 USC § 869(a), by the General Counsel, Department of Transportation.[1] One member of that court recused himself; and the remaining four judges were equally divided as to whether the trial judge had been detailed in violation of Article 26 of the Uniform Code, 10 USC § 826. On the premise that, when the judges of a Court of Military Review are equally divided, the findings and sentence of the court-martial

---

**1.** *See* Art. 1(1), Uniform Code of Military Justice, 10 USC § 801(1), which defines "Judge    Advocate General."

may not be affirmed, all four judges joined in setting aside the findings and sentence. 25 MJ 870 (1988).

In turn, these two issues were certified to this Court pursuant to Article 67(b)(2), UCMJ, 10 USC § 867(b)(2):

## I

WHETHER THE COAST GUARD COURT OF MILITARY REVIEW WAS CORRECT IN ITS HOLDING, CONTRARY TO THE GENERAL RULE APPLIED TO APPELLATE COURTS, THAT ARTICLE 66(c) OF THE UNIFORM CODE OF MILITARY JUSTICE [10 USC § 866(c) ] MANDATES THAT AN EVENLY DIVIDED COURT OF MILITARY REVIEW SET ASIDE ANY FINDINGS THAT RESULTED FROM THE ISSUE UPON WHICH THE COURT WAS DIVIDED.

## II

WHETHER THE ASSIGNMENT OF THE MILITARY TRIAL JUDGE IN THE GENERAL COURT-MARTIAL OF CHIEF WARRANT OFFICER BECKERMANN WAS IN COMPLIANCE WITH THE PROVISIONS OF ARTICLE 26(c) OF THE UNIFORM CODE OF MILITARY JUSTICE.

We rule in favor of Beckermann as to the second issue. Therefore, it is unnecessary to decide the first.[2]

## I

At an Article 39(a)[3] session, the military judge, Captain William H. Norris, considered a defense motion to disqualify him from presiding over the trial. The defense relied on Article 26(c) of the Code which provides:

> The military judge of a general court-martial shall be designated by the Judge Advocate General, or his designee, of the armed force of which the military judge is a member for detail in accordance with regulations prescribed under subsection (a). Unless the court-martial was convened by the President or the Secretary concerned, neither the convening authority nor any member of his staff shall prepare or review any report concerning the effectiveness, fitness, or efficiency of the military judge so detailed, which relates to his performance of duty as a military judge. A commissioned officer who is certified to be qualified for duty as a military judge of a general court-martial may perform such duties only when he is assigned and directly responsible to the Judge Advocate General, or his designee, of the armed force of which the military judge is a member and may perform duties of a judicial or nonjudicial nature other than those relating to his *primary duty as a military judge of a general court-martial* when such duties are assigned to him by or with the approval of that Judge Advocate General or his designee.

(Emphasis added.)

In connection with this motion, the military judge entered two documents into the record as appellate exhibits. The first was a letter dated May 23, 1986, from the Commandant of the Coast Guard[4] to Captain Norris which stated

---

**2.** In *United States v. Ohrt,* 26 MJ 578 (AFCMR 1988), the Court of Military Review held that, when a Court of Military Review is equally divided, the findings and sentence of the court-martial are affirmed. Pursuant to the petition of the accused in that case, we have granted review to determine the correctness of this conclusion. Thus, the issue posed here by the first certified question—which we are not answering—will soon be considered further by us in *Ohrt,* at which time we also will have the benefit of the argument by counsel for the parties there.

**3.** UCMJ, 10 USC § 839(a).

**4.** The format of the letter indicated that it was from the Commandant; but it had been signed by the Chief Counsel of the Coast Guard, who—as noted by the Court of Military Review—"is the only officer expressly authorized by the Department General Counsel to designate general court-martial judges under Article 26(c), Uniform Code of Military Justice. *See* 49 C.F.R. Pt. 1, Subpt. C., App. A, para. 2.(a)(3) (1986)." 25 MJ 870, 873 n. 1.

1. [Y]ou are hereby designated as a General Court-Martial Military Judge for the United States Coast Guard. .Your primary duty shall be that of a General Court-Martial Military Judge.

2. Other than the ... [primary duty], you shall not undertake to perform duties of either a judicial or nonjudicial nature unless you receive prior authorization from me. You are authorized to provide advice and assistance, as needed, to the staff members of the Twelfth District Legal Office. The performance of this temporary collateral assignment shall not infringe in any way upon your primary duty as a General Court-Martial Judge as required by ... [Article 26(c)].

This designation shall remain in effect until specifically cancelled by me, or until you are transferred from duty in the Office of Chief Counsel, whichever shall come first.

The second document introduced by the military judge was a message order from the Commandant of the Coast Guard to the Commander of the Coast Guard Twelfth District. According to this message, effective May 28, 1986, Captain Norris "is relieved of all duties as Twelfth CG District Legal Officer and shall assume the duties of the West Coast Military Judge.... This order constitutes a temporary change in assignment and remains in effect until ... [Norris] is released by COMDT (G–PO) to assume normally assigned duties."

On *voir dire* by the defense, the military judge stated that the last fitness report he had received had been as Twelfth District Legal Officer. Although a fitness report is required in the Coast Guard "upon a permanent change of station or orders to a different billet," he had not received a fitness report when he had been "order[ed] to become West Coast military judge." Captain Norris presumed that his next fitness report would be submitted by the Chief Counsel of the Coast Guard and would cover the period of time he was serving as

military judge—which he considered to be his "primary military dut[y]." Captain Norris understood that his assignment as general court-martial judge was intended to be only for the trial of CWO Beckermann and that his term would be "terminated based on orders from the Commandant, I presume, or from the Chief Counsel."

According to Captain Norris, "[s]ince 28 May, ... [he had been] relieved as the District Legal Officer by Comdr. William Bissell." Then he pointed out:

[I]n accordance with the letter ... from the Chief Counsel, which indicated that I was available to provide collateral duty, advice and assistance to the Twelfth District, I basically worked in two areas: one was the civil case that I've already mentioned, which took three days of court time and approximately—well, I prepared the week before a little bit for that case.[5] The only other matter that I really worked on was: I provided assistance and advice to the investigating officer in a marine casualty at the request of the Legal Office. Other than that, I was available to counsel. We held several pretrial conferences. I did legal research in this case. And I also indicated both to the Chief Counsel's docketing clerk and to the Chief Trial Judge that I was available for special courts-martial if any arose during that period of time. I was not asked to try any special courts-martial.

On the day after Beckermann's trial ended, Captain Norris was formally reassigned as Twelfth District Legal Officer.

II

Because of its small size, limited number of attorneys, and low court-martial caseload, the Coast Guard has been reluctant to assign any of its lawyers the fulltime duty of military judge. Thus, when the amendment to Article 26(c) took effect in 1969, the Coast Guard—in an attempt to comply

---

**5.** Apparently, Captain Norris was referring to a "search and rescue case" which had arisen in the Coast Guard Twelfth District and in connection with which he had testified that he had been in San Jose, California, on June 18, 1986, to assist a Department of Justice trial attorney.

with the Code but to retain some flexibility in the use of its legal personnel—initially adopted a system whereunder a lawyer would be assigned from time to time to try general courts-martial as particular cases arose. The General Counsel of the Department of Transportation—or the Chief Counsel, as his designee—would order the chosen lawyer to serve as a military judge and direct that "his primary duty" would be to try general courts-martial. However, the appointment generally was intended to be only for the purpose of presiding over one or more specific trials, and once these trials were over, the erstwhile military judge would return to his normal assignment.

In *United States v. Moorehead*, 20 USCMA 574, 44 CMR 4 (1971), this Court concluded that Congress had not

> intended to grant exception to the Coast Guard when it legislated Article 26(c). If primary duty means no more than that the duty comes first for the time an officer is trying a case, the words really serve no purpose. Even before the Military Justice Act of 1968, judging was primary duty in that sense of the term. Yet Congress did not in Article 26(c) provide any different treatment for the Coast Guard than for the other armed forces, including the Air Force, which also had had reservations about earlier bills to enact some features of the trial judiciary system. As the defense reminds us, all the other armed forces have proceeded to implement the Military Justice Act of 1968 by placing officers currently functioning as military judges of general courts in a separate assignment category and by detailing judges from this category to fill requirements for general courts-martial judges as these requirements arise.

The defect we find in the current Coast Guard arrangement is the random or one-time use of military judges in the infrequent general courts-martial that armed force experiences and the lack of even a limited concentration on trial work. For the Coast Guard Chief Counsel simply to declare that a qualified military judge has as his primary duty the trying of general courts-martial could not make such duty primary in the sense that it required most of the judge's time. But if the Coast Guard Chief Counsel designated one officer to try whatever general courts-martial occurred during the time that officer was designated, and if that same officer also was used to try special courts-martial, such an arrangement would appear to comply with congressional intent.

A military judge does not have the primary duty of functioning in the trial of general courts-martial unless he is in a separate assignment category in which he is designated to function in the trial of general courts convened during the period of that assignment.

Since under the arrangement in effect at the time of this trial no Coast Guard military judge had the primary duty of trying general courts-martial cases, we find that Article 26(c) was not complied with.

*Id.* at 579–80, 44 CMR at 9–10.

After *Moorehead* was decided, the Coast Guard began to assign two officers directly under the Chief Counsel as full-time general court-martial military judges. These officers were to sit on all general courts-martial in the Coast Guard, as well as many special courts-martial. *See* Annual Report of the U.S. Court of Military Appeals and the Judge Advocates General of the Armed Forces and the General Counsel of the Department of Transportation (hereafter Annual Report) 41 (1971); Annual Report, *supra* at 39 (1972). One of these two judges was assigned on the East Coast and one on the West Coast; but after a few years, the Coast Guard reduced from two to one its fulltime general court-martial judges. *Compare* Annual Report, *supra* at 45 (FY 1977) *with* Annual Report, *supra* at 49 (FY 1978).

Unfortunately, Captain Blayney, who at the time of trial occupied the only billet provided by the Coast Guard for a fulltime military judge, had to recuse himself from

the trial of Beckermann because it was anticipated that he might be called as a character witness for the accused. Thus, the Coast Guard was forced to work out a makeshift arrangement to provide a qualified "military judge." Unfortunately, as Chief Judge Baum and Judge Bridgman recognized in their opinions in the court below, the arrangement employed here does not comply with Article 26(c), as interpreted in *Moorehead.*

Appellate defense counsel have cited a number of circumstances which support this conclusion. Of special importance is the short period of time during which Captain Norris served as a military judge. Moreover, as was mentioned during the oral argument, a fitness report for the 40–day period during which Captain Norris had been designated as "military judge" was not submitted by the Chief Counsel of the Coast Guard until about a year after the trial and after briefing and oral argument had taken place in the Court of Military Review. This late submission was an obvious afterthought and tends to show that Captain Norris had never been given the "primary duty" of serving as a military judge responsible to the Chief Counsel—instead of continuing in his assignment as District Legal Officer. Indeed, at oral argument appellate government counsel was unsure whether the fitness report that was filed for Captain Norris by the Commandant of the Twelfth District at some time after the trial purported to exclude the 40 days during which he had been serving in his "primary duty" as military judge.

Appellate defense counsel also point out that the position of District Legal Officer carried the rank of captain and that Captain Norris had been serving in this rank as a "frocked" captain—which we understand to be a rank held temporarily because of service in a particular billet. On the other hand, in the Coast Guard the position of a military judge detailed to try general courts-martial authorizes only the rank of commander. During the 40 days when he purportedly was performing his "primary duty" as military judge, Norris did not revert to the rank of commander but instead continued to serve as a captain. Moreover, he continued to perform some nonjudicial duties connected with the position of District Legal Officer—even though someone else purported to occupy that position for 40 days.

In enacting Article 26(c) of the Code, Congress undoubtedly intended to assure the independence and the professionalism of the judges who presided over general courts-martial. There is little reason to believe that the assignment of Captain Norris for 40 days to the "primary duty" of military judge for the purpose of presiding over Beckermann's trial gave him any greater independence—or reason to believe that he was independent—than he otherwise would have possessed. Likewise, a temporary assignment of this type does not provide the congressionally intended incentive for professionalism as a judge that would have existed if the assignment had been more than a brief interruption in Captain Norris' performance of nonjudicial duties.

Chief Judge Baum wrote:

If the Government's argument is accepted, however, the practice of random or one-time use of military judges for general courts-martial could be effected on a regular basis by simply issuing temporary duty orders to a qualified officer whenever necessary or convenient for the trial of a pending general court-martial. Judge Bridgman and I do not believe Article 26(c), Uniform Code of Military Justice, as explicated in *Moorehead, supra,* allows such a result. Accordingly, we believe the message orders and letter from the Chief Counsel, which caused the permanently assigned Twelfth Coast Guard District Legal Officer to function one time as a general court-martial judge during a 40 day period while those orders and designation were in effect, violated the terms of *Moorehead, supra.*

In my mind, there is just no getting around the fact that this district legal officer was designated as judge solely

for the trial of this one general court-martial. Congress amended the Uniform Code of Military Justice to stop such practices and the Court of Military Appeals has confirmed this Congressional intent. It is irrelevant to the ultimate decision in the case before us that the judge may have been experienced; or of proven judicial ability and temperament; or known for his integrity and ability to withstand pressure from a general court-martial authority superior.

25 MJ at 873–74. We subscribe fully to these observations.

Undoubtedly, the Coast Guard officials who created the arrangement used here believed that Captain Norris—who several years before had served as a military judge—would provide Beckermann a fair trial. In their view, the course chosen was the simplest and most expeditious way to deal with the problem created by the recusal of Captain Blayney, who normally would have tried the case as military judge.

However, as Judge Bridgman explained, the Coast Guard had not been left without a lawful remedy in this situation:

> Where the designated general courts-martial judge has recused himself or herself from a given case, or where the disqualification is apparent before being detailed to a case, there is an alternative which can provide for the expedient disposition of the case while avoiding any appearance or allegation of failure to comply with Article 26(c). That Article and RCM 503(b)(3) permit duly designated general court-martial judges from another armed service to be detailed to Coast Guard courts. Considering that this alternative will be rarely necessary, it does not appear that obtaining the

services of a military judge from another service would be unduly difficult or that it would be detrimental to the administration of military justice in the Coast Guard.

25 MJ at 875.

Indeed, historically the Coast Guard has not hesitated to use military judges from other services—principally the Navy. Thus, in 1972, judges from other services were used in 15 out of 167 special courts-martial.[6] In 1971, judges from other services were used in 10 out of 129 special courts.[7] Indeed, recently there was pending on the docket at the Coast Guard Court of Military Review a general court-martial tried before a Navy judge. *United States v. Whidbee*, CMR Dkt. No. 909.

Perhaps justice is furthered when an accused is tried by a military judge of his own service rather than by one of some other service. However, the advantages are not so great as to preclude resort to the alternative that Judge Bridgman has pointed out—which Congress made available at the same time that it enacted Article 26(c). In any event, our main task is not to evaluate different alternatives.[8] It suffices that Congress has prohibited the Coast Guard from proceeding as it did in this case.

### III

The second certified issue is answered in the negative.

The decision of the United States Coast Guard Court of Military Review is affirmed.

Judge SULLIVAN concurs.

6. Annual Report of the U.S. Court of Military Appeals and the Judge Advocates General of the Armed Forces and the General Counsel of the Department of Transportation (hereafter Annual Report) 37 (1972).

7. *See* Annual Report, *supra* at 39 (1971).

8. Reserve officers who are lawyers and are assigned for long periods of time as military judges and who may be called to active duty to

try particular cases offer another solution to the problem. The Navy has pioneered with such a program—which involves civilian judges who, as reserve naval officers, are designated as military judges and periodically are called to active duty to try courts-martial. Another alternative might be the designation of some qualified retired Coast Guard lawyers as military judges and recalling them to active duty to try particular cases.

COX, Judge (dissenting):

I agree with the position of Judges Josephson and Burgess below. 25 MJ 870, 876–77. This case is not the same as *United States v. Moorehead*, 20 USCMA 574, 44 CMR 4 (1971), where the Coast Guard employed an ad hoc military judge system for all cases. Ever since *Moorehead*, the Coast Guard has maintained at least one permanent-duty military judge. Here, as it happens, that judge knew appellant and was even a potential character witness for him.

In this circumstance, nothing could be more practical or fair to appellant than what happened—another officer, who had previously served as general court-martial judge, was temporarily redesignated as a military judge. This officer was duly relieved of his prior assignment and formally detailed to the judiciary as his "primary" (defined in Webster's Third New International Dictionary 1800 (Unabridged 1981) as "first in rank or importance") duty.

There are many circumstances, both within and without the military, where people are given temporary responsibilities in addition to or in lieu of their ordinary duties. Court-martial membership is a ready example. It is self-evident that such temporary duties often are regarded as taking, for the time being, priority over normal duties. At the completion of such tasks, the regular duties regain paramountcy. That is what happened here, and I read nothing into it that was sinister or contrary to the spirit and intent of Article 26(c), Uniform Code of Military Justice, 10 USC § 826(c). *See also* R.C.M. 502(c), Manual for Courts-Martial, United States, 1984.

Like my Brothers, and Chief Judge Baum and Judge Bridgman below, I agree that a judge from another service might well have been appointed to the court-martial. The question, however, is not whether there was an alternative, but whether there was anything the matter with the procedures utilized.

The military judge here was not subordinate to the convening authority, either before, during, or after the court-martial, and he was not rated for his judicial performance by *any* commander. It is astonishing to me that Congress could have intended that not a single attorney within the entire Coast Guard establishment would be competent to step in and pick up the judicial reins if the sole general court-martial judge was, for whatever reason, unable to proceed in a particular case. This, I gather, is the true holding of the majority opinion because the substitute judge here was obviously one of the most qualified officers in the Coast Guard to preside over a court-martial.

As there is not even the suggestion that appellant was prejudiced [Art. 59(a), UCMJ, 10 USC § 859(a)], I would affirm.