**UNITED STATES**

v.

**Joseph P. KOVAC, Aviation Structural Mechanic, Third Class, U.S. Coast Guard.**

**CGCM 0055**
**Docket No. 989.**

U.S. Coast Guard Court of Military Review.

Nov. 6, 1992.

Trial Counsel: LT John B. Gately, USCG.

Detailed Defense Counsel: LCDR Christopher A. Abel, USCG.

Appellate Defense Counsel: LCDR G Arthur Robbins, USCG (Brief).

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LCDR Charles J. Bennardini, USCG.

Before Panel Six, BAUM, BRIDGMAN and BASTEK, Appellate Military Judges.

BAUM, Chief Judge:

Appellant was tried by general court-martial on charges of rape, forcible sodomy

and adultery in violation of Articles 120, 125 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 925, 934. He pled not guilty to all offenses and, despite his pleas, was convicted by officer members of one specification of rape and one specification of adultery as charged. The judge, however, found the adultery offense multiplicious for findings with rape and dismissed it upon the Government's electing to proceed to sentencing on the rape finding. Appellant was also convicted of one specification of indecent assault in violation of Article 134, UCMJ, as a lesser included offense of sodomy. The court sentenced Appellant to a bad conduct discharge, confinement for six months, forfeiture of $200 pay per month for six months and reduction to E-1. The convening authority approved the sentence as adjudged. Before this Court, Appellant has assigned the following errors:

## I

THE EVIDENCE WAS NOT SUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THE OFFENSES FOR WHICH APPELLANT WAS SENTENCED

## II

THE MILITARY JUDGE COMMITTED PLAIN ERROR BY MISREADING THE STIPULATION OF LILLIAN KELLY'S EXPECTED TESTIMONY

## III

THE GENERAL COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS APPOINTED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION

## IV

THE COAST GUARD COURT OF MILITARY REVIEW LACKS AUTHORITY TO AFFIRM EITHER THE FINDINGS OR SENTENCE OF THE GENERAL COURT–MARTIAL, AS APPROVED BY THE CONVENING AUTHORITY

Briefs from Appellant and the Government having been received, the case is ready for decision.

## Assignment of Error I

Appellant contends that the Government has failed to meet its burden of proof in two respects. First, that the evidence does not prove beyond a reasonable doubt the alleged victim's lack of consent and, secondly, that the evidence fails to establish beyond a reasonable doubt that Appellant did not reasonably and honestly believe that Seaman Apprentice S, the alleged victim, consented. We disagree. The evidence convinces us of Appellant's guilt beyond a reasonable doubt.

In contrast to *U.S. v. Townsend,* 34 M.J. 882 (C.G.C.M.R.1992), where we were not persuaded by the evidence that there had been unwilling sexual intercourse accomplished by force, we have no difficulty finding that such occurred here. Moreover, we are assured that Appellant did not reasonably and honestly believe there was consent. In reaching these conclusions, we have accepted as fact that Appellant had sexual relations with Seaman Apprentice S on at least one previous occasion and, on at least two other occasions, engaged in foreplay with her, stopping short of a consummated act each time.

Notwithstanding these prior relations, we have no doubt that in this instance Appellant refused to stop when told to do so by Seaman Apprentice S and that he forcibly overcame her physical resistance. The case boils down essentially to a matter of credibility. We find the victim's testimony more credible than the Appellant's.

Appellant testified that he visited his old duty station two days before Christmas looking for someone to go out with for beers. Finding Seaman Apprentice S in her room at the station, he and she decided to do just that. At first, they talked about going to the beach but Appellant suggested a motel because it was cold and rainy. Seaman Apprentice S testified that she agreed to go with Appellant, but specifically said, "don't get the wrong idea, don't think anything is going to happen." Record at 720. She testified that he responded by saying that she had the wrong idea.

Nevertheless, according to Seaman Apprentice S's testimony, while having a beer and watching TV, Appellant tried to kiss her. Whereupon, she told him to take her

back to the station. Instead, according to Seaman Apprentice S, he grabbed her shoulders and pushed her down on the bed. He continued his uninvited forceful actions, despite her protests, removing clothing, and ultimately penetrating her against her will.

The evidence of record leads us to believe that Appellant fully intended from the outset to have sex with Seaman Apprentice S, whether she objected or not. Seaman Apprentice S did object and did resist, manifesting her lack of consent both verbally and physically. We are convinced beyond a reasonable doubt that Appellant understood the words and actions of Seaman Apprentice S to mean she did not consent to sexual intercourse and that he forcibly overcame her objections and her physical resistance. In resolving the facts, we have considered Appendices A and B to Appellant's brief. The motion to file the appendices, contained in a footnote to Appellant's brief, is granted. Assignment of Error I is rejected.

### Assignment of Error II

In Assignment II, Appellant asserts that the judge committed plain error by leaving a key word out of stipulated testimony read to the court members. Appellant contends that without the missing word the impact of the expected testimony was almost entirely reversed. In response, the Government submits that, "[a]fter evaluating the military judge's omission of this one single word against all of the evidence in this 1221 page record, it is obvious that the error was harmless." Appellate Government Counsel's Brief at 12. We agree with the Government in this regard and in the view that Appellant's failure to object to the omission at trial constituted waiver. Assignment of Error II is rejected.

### Assignment of Error III

■ In Assignment of Error III, Appellant contends that the trial judge was appointed in violation of the Appointments Clause of the Constitution. That assertion has also been made with respect to the judges on this Court as part of Assignment IV. Both contentions were addressed and resolved by this Court in *U.S. v. Prive*, 35 M.J. 569 (C.G.C.M.R.1992), which found the Appointments Clause inapplicable to the courts and judges provided for by Congress' rules for the government and regulation of the land and naval forces. Furthermore, we agreed with the rationale of *U.S. v. Coffman*, 35 M.J. 591 (N.M.C.M.R. 1992), which found that the Constitution's Appointments Clause was satisfied by the presidential appointment of commissioned officers, assuming *arguendo* that the Clause applied to military judges. Assignment of Error III is rejected.

### Assignment of Error IV

#### A.

#### Appointment of C.G.C.M.R. Judges

■ In Assignment IV, Appellant challenges the authority of this Court on three separate grounds. The first ground is the one presented in Assignment of Error III, relating to the Constitution's Appointments Clause and, as indicated already, has been resolved contrary to Appellant's position in *U.S. v. Prive, supra,* and *U.S. v. Coffman, supra.* Before leaving the subject, however, there are aspects that warrant further explication. In *U.S. v. Prive, supra,* this Court concluded from a long line of United States Supreme Court decisions that certain constitutional principles are treated differently when applied to the military. There is good reason for this approach.

Discipline is essential if the military is to meet its mission. The very survival of the nation may depend on individual members obeying orders without hesitation. Supreme Court decisions, recognizing this fact, have consistently adhered to the proposition that an effective fighting force, by its very nature, cannot comport with every constitutional provision in the same way as society at large, particularly when the matter at issue relates to military discipline. Consequently, the Supreme Court has accorded great latitude to congressional action under Article I, § 8, cl. 14 of the Constitution, when such action bears on military discipline.

Pursuant to that constitutional mandate, "To make Rules for the Government and Regulation of the land and naval Forces," Congress in 1950 created the Uniform Code

of Military Justice, a criminal justice system which carefully balanced the competing interests of military discipline and individual rights. In so doing, a form of due process known as military due process was given real meaning by Congress. Then, in 1968, for the first time in our history, Congress incorporated into that system a military trial and appellate judiciary to buttress that concept of military due process. In keeping with the historic role of the Judge Advocates General in disciplinary matters, Congress placed appointment authority for these new judges in the hands of the Judge Advocates General of the various armed services. While the idea of a military judiciary was new, the important position and authority of the Judge Advocate General in the military justice system was not.

Appellant's assignment of error calls into question this key role of the Judge Advocate General in the military disciplinary system. Thus, this Court, and other courts as well, have been asked to strike down that authority as unconstitutional. In response, the words of former Chief Justice Warren, quoted with approval by then Chief Justice Burger in *Chappell v. Wallace,* 462 U.S. 296, 305, 103 S.Ct. 2362, 2368, 76 L.Ed.2d 586 (1983), and set out in my separate opinion in *U.S. v. Prive* at 35 M.J. 578 have direct applicability: "[T]he special relationships that define military life have 'supported the military establishment's broad power to deal with its own personnel. The most obvious reason is that courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have.' "

For a court, at this point, to interfere with this congressionally designed military judicial establishment by invoking case decisions that until now have applied only to civilian institutions would be an intrusion upon military authority with possibly unforeseen deleterious impact on discipline. It should be left to Congress to determine that impact and what, if any, changes to the system might be warranted by *Freytag v. Commissioner of Internal Revenue,* —— U.S. ——, 111 S.Ct. 2631, 115 L.Ed.2d 764

(1991), or the other matters set forth in my separate opinion in *U.S. v. Prive* at 35 M.J. 578 n.1.

There is another and even more basic reason that militates against a court decision at this time on the subject of *Freytag's* applicability. The instant case can and should be decided on a basis that does not require a determination of the Uniform Code of Military Justice's constitutionality. The make-up of this Court is such that the rationale of *U.S. v. Coffman, supra,* which dealt with appointment of trial judges, applies with equal force at this level. Thus, there is no need to address the question whether the Uniform Code of Military Justice provision relating to assignment of appellate military judges is constitutional.

■ As in *Coffman,* if we assume *arguendo* that the appointment of those who serve as court of military review judges must meet the terms of Article II, § 2, cl. 2 of the United States Constitution, we find that those terms are met when commissioned officers are assigned as court of military review judges. Since commissioned officers have been assigned as judges on this Court in all instances, the requirements of the United States Constitution have been met.

Our conclusion is reached in the following manner. Article II, § 2, cl. 2 of the United States Constitution says:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the [S]upreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

Pursuant to that clause, as *U.S. v. Coffman, supra,* declares, commissioned officers of the various military branches are appointed by the President with the advice and consent of the Senate. Based on that fact, and assuming *arguendo* that the Ap-

pointments Clause applies to military judges, the Navy–Marine Corps Court of Military Review, in *U.S. v. Coffman, supra,* determined that, "A second appointment from the President to a commissioned officer to perform the duties of a military judge is simply not required." *Id.* at 592. We agree with that determination and find it equally applicable to the judges on the Coast Guard Court of Military Review.

■ Three of the judges on this Court are Coast Guard commissioned officers serving on active duty in the rank of captain. As explained in my separate opinion in *U.S. v. Prive,* 35 M.J. at 579, Judge Bridgman and I are retired commissioned officers. Both of us retired with over 20 years of active service before our present assignment as appellate military judges, I, as a captain in the United States Navy and Judge Bridgman as a captain in the United States Coast Guard. The General Counsel, Department of Transportation, as the Judge Advocate General of the Coast Guard,[1] assigned us and the other judges to this Court pursuant to Article 66, UCMJ, 10 U.S.C. § 866, which says: "Appellate military judges who are assigned to a Court of Military Review may be commissioned officers or civilians...."

Since assignment to the Court could be either as a civilian or as a commissioned officer, little thought had to be given to which term fit more precisely. Suffice it to say, since Judge Bridgman and I were, and still are, civilian employees of the Coast Guard, we thought of ourselves as civilians, knowing also that we maintained a continuing status as commissioned officers, albeit in a retired capacity. That continuing status was clearly recognized by the United States Supreme Court in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) when it said:

> The retired officer remains a member of the Army, see *United States v. Tyler,* 105 U.S. 244, 26 L.Ed. 985 (1882), and continues to be subject to the Uniform Code of Military Justice, see 10 U.S.C. § 802(4). See also *Hooper v. United States,* 164 Ct.Cl. 151, 326 F.2d 982, cert. denied, 377 U.S. 977, 84 S.Ct. 1882, 12 L.Ed.2d 746 (1964). In addition, he may

forfeit all or part of his retired pay if he engages in certain activities. Finally, the retired officer remains subject to recall to active duty by the Secretary of the Army "at any time." Pub.L. 96–513, § 106, 94 Stat. 2868. These factors have led several courts, including this one, to conclude that military retired pay is reduced compensation for reduced current services. In *United States v. Tyler,* 105 U.S., at 245, the Court stated that retired pay is "compensation ... continued at a reduced rate, and the connection is continued, with a retirement from active service only." (Footnotes omitted).
>
> *Id.,* 453 U.S. at 221–22, 101 S.Ct. at 2735–2736.

A recent amendment to the Uniform Code of Military Justice appears to settle the issue that, as between the two categories, commissioned officer or civilian, it is as commissioned officers that Judge Bridgman and I are assigned to this Court rather than as civilians.

In 1990, Article 142, UCMJ, which relates to the United States Court of Military Appeals, was amended by the following addition:

> For purposes of appointment of judges to the court [U.S. Court of Military Appeals], a person retired from the armed forces after 20 or more years of active service (whether or not such person is on the retired list) shall not be considered to be in civilian life.
>
> Art. 142(b)(4), UCMJ, 10 U.S.C. § 942(b)(4).

While Article 66, UCMJ, the provision governing courts of military review, has not been so amended, certain basic rules of statutory construction lead ineluctably to the conclusion that Judge Bridgman and I "shall not be considered to be in civilian life" for purposes of assignment to the United States Coast Guard Court of Military Review.

When construing statutory clauses, one should look first to definitions or declared constructions within the statute because: "The legislature may define, in a statute, words or phrases used therein and may declare in the body of an act the construc-

---

1. Art. 1(1), UCMJ, 10 U.S.C. § 801(1).

tion to be placed thereon." 82 C.J.S. *Statutes* § 315 at 536. In this respect, the Uniform Code of Military Justice neither defined nor declared the construction to be placed on the word "civilian" before 1990.

Even if the term had been previously defined, however, "a subsequent amendment to a statute may operate to widen the meaning of [that] term." 82 C.J.S. § 315 at 539. Furthermore, in this regard, it is "presumed that the legislature acted with deliberation, with knowledge of the effect of its act, and with a purpose in view, and that the provisions of the act were formulated in harmony therewith." 82 C.J.S. § 315 at 540–541. It is also, "presumed that the legislature intended to apply the same rule to different states of facts where these are manifestly within one and the same reason," and, finally, "presumptions are indulged against contradictory provisions." 82 C.J.S. § 315 at 548 and 547.

■ Upon application of these rules of construction, we are convinced that assignment of all the judges to this Court was in their capacity as "commissioned officers." Granted, Judge Bridgman and I are not on active duty, as are the other three judges, but the Uniform Code of Military Justice does not limit judicial assignments of commissioned officers to those on active duty. If such a limitation had been intended, Article 66, UCMJ, undoubtedly, would have been worded in a manner similar to Article 25(a), 10 U.S.C. § 825(a), UCMJ, which says with respect to who may serve on courts-martial: "Any commissioned officer on active duty is eligible to serve...." No such active duty requirement is included in either of the provisions relating to judges, Article 26, 10 U.S.C. § 826 or Article 66, UCMJ.

■ Finally, the fact that I am a Navy captain rather than a Coast Guard captain is not in any way an impediment to service on a Coast Guard court. Assignment of judges from one military branch to courts of another is not precluded by any provision of the Uniform Code of Military Justice at either the trial or appellate levels. As a matter of practice, the Navy has routinely provided trial judges for Coast Guard courts-martial when needed in the past. Moreover, my two immediate predecessors as Chief Judges of this Court were retired Navy captains.

Another relevant fact is that Judge Bridgman and I were first designated as appellate military judges when we were on active duty. He was assigned to the Coast Guard Court of Military Review in 1975 as a captain on active duty and served on the Court in that capacity until 1977. After his retirement, he was assigned again to this Court in 1978 and has served continuously since then.

I was assigned to the Navy–Marine Corps Court of Military Review in 1976 as a Navy captain on active duty and served on that Court in that capacity until 1982. After retirement, I was assigned to this Court in 1985 as Chief Judge and have served in that capacity continuously since that date. Accordingly, our current assignments to this Court are not only consistent with the general duties of commissioned officers with requisite legal credentials, they are also obviously in keeping with specific past duties that we have performed as commissioned officers on active duty. The previously quoted words from *U.S. v. Coffman*, 35 M.J. at 592, are unmistakably applicable: "A second appointment from the President to a commissioned officer to perform the duties of a military judge is simply not required."

### B.
### Lack of Fixed Terms for C.G.C.M.R. Judges

As his second basis for challenging this Court, Appellant raises the issue of lack of a specified term of office for the judges on the Court. That, too, had been resolved against the Appellant in an earlier decision by the Navy–Marine Corps Court of Military Review. Subsequent to the filing of briefs in this case, the United States Court of Military Appeals affirmed the Navy–Marine Corps Court of Military Review decision that lack of a fixed term of military judicial office does not result in a denial of due process. *U.S. v. Graf*, 32 M.J. 809 (N.M.C.M.R.1990), *aff'd* 35 M.J. 450 (C.M.A.1992).

## C.

### Use of Collateral Duty Judges on C.G.C.M.R.

The third purported defect with respect to this Court is one not previously addressed. Appellant asserts for the first time that appellate military judges serving in a collateral duty capacity deprive this Court of jurisdiction. He cites *U.S. v. Beckermann*, 27 M.J. 334 (C.M.A.1989) and *U.S. v. Moorehead*, 20 U.S.C.M.A. 574, 44 C.M.R. 4 (1971) for the proposition that general court-martial trial judges must have judging as their primary duty and argues that the same principle should apply to court of military review judges.

### 1. Civilian Part–Time Judges

██ The problem with this argument is that part-time judges are an accepted component of both the civilian and military judicial systems. Their utilization in the civilian community is reflected in the American Bar Association's Code of Judicial Conduct. The most recent version of that Code, adopted by the American Bar Association's House of Delegates in August 1990, describes three different categories of such judges in its Terminology section: (a) "continuing part-time judge," (b) "periodic part-time judge," and (c) "pro tempore part-time judge." [2] Included in the definition of "continuing part-time judge" are retired judges subject to recall who are permitted to practice law. Also, within the federal system, part-time magistrate judges are authorized by 28 U.S.C. § 632(b).

### 2. Military Part–Time Judges

In the military judiciary, judges with other primary duties have been an important element from the very beginning in 1969. It is only the general court-martial judge who, in Article 26(c), UCMJ, is required by law to have judging as a primary duty. No such requirement has been established by Congress for other judges in the military justice system, either at the court of military review level or for special court-martial trial judges. The cases cited by Appellant, *U.S. v. Beckermann, supra,* and *U.S. v. Moorehead, supra,* are limited exclusively to general court-martial judges and the interpretation of Article 26(c), as are the comments from this Court's decision in *U.S. v. Beckermann*, 25 M.J. 870, 874 (C.G.C.M.R.1988) quoted in Appellant's brief at 12.

*U.S. v. Moorehead, supra,* provides background on the legislation in 1968 that established for the first time the judicial offices of military judge and appellate military judge. As indicated in that opinion, only general court-martial judges were expressly required to have judging as their primary duty. Special court-martial judges were excluded from that requirement and, initially, both the Navy and Coast Guard utilized part-time judges for special courts-martial. To this day, while the other services may have chosen by regulation to treat special court-martial judges in a manner similar to general court-martial judges, the Coast Guard has continued to utilize part-time special court-martial judges to accommodate this service's special needs. For the same reason, judges with other duties have been utilized on the Coast Guard Court of Military Review since the establishment of the Court in 1969.

### 3. C.G.C.M.R. Organization and Procedure

All judges on the Coast Guard Court serve on a continuing basis. Four of our five judges have primary duties that are not associated with their court work. These judges devote time to cases and perform judicial functions on an as-needed basis, participating fully in all their panel decisions, including those with oral argument hearings, which account for approximately one-third of this Court's cases. In those cases orally heard, all panel judges are fully engaged in their panel's preparation, conferencing before and after each hearing, as well as questioning counsel during the argument itself.

Moreover, since this Court has no law clerks, commissioners, or central legal staff to assist in legal research, drafting or editing, all the judges contribute in one or more of these ways with respect to every published opinion. As a result, court opin-

---

**2.** The prior Code of Judicial Conduct adopted by the American Bar Association's House of Delegates in 1972, also includes part-time judges but defines them in a more limited manner under its Compliance section.

ions that are credited to a particular author-judge always contain much of value from the other judges. When a judge concurs without comment, it invariably means that contributions provided in chambers have been incorporated into the opinion to that judge's satisfaction. Court decisions, and the opinions explaining them, are truly arrived at in a joint fashion.

While the number of cases reviewed by the Coast Guard Court does not warrant five, or even three, full-time judges, the Court organization, which calls for one member with primary duty as chief judge and four others with collateral duty as court of military review judges, has ideally suited the Coast Guard's caseload over the past 23 years. Under this arrangement, each judge is able to devote enough time to assigned cases to fully satisfy the requirements of Article 66, UCMJ. No findings or sentences are affirmed unless a majority of judges determines they are correct in law and fact and should be approved.

The four judges with other primary duties are, at present, Judges Bridgman, Grace, Bastek and Edwards. Judge Bridgman and Judge Bastek are both chiefs of divisions within the Office of Chief Counsel of the Coast Guard. Judge Bridgman is Chief of the Regulations and Administrative Law Division and Judge Bastek is Chief of the Legislation Division. Judges Grace and Edwards have primary duty assignments outside the Office of Chief Counsel. Judge Grace is a member of the teaching faculty of the Industrial College of the Armed Forces located at Ft. McNair as part of the National Defense University. Judge Edwards is Chief of the Physical Disability Evaluation Division within the Office of the Coast Guard's Chief of Personnel and Training.

As a general rule, the non-judicial duties of the four judges do not relate in any way to matters that come before this Court, presenting no inherent conflict, actual or perceived. If a conflict in a particular case should somehow arise, recusal by the affected judge provides the necessary corrective action. On infrequent occasions in the past when personnel relationships, such as supervisory responsibilities over an officer who was counsel in a case, have prompted a possible perception of conflict of interest, the judge with that perceived conflict has readily recused himself.

### 4. Other C.M.R. Use of Part–Time Reserve Judges

The Coast Guard is not the only military branch with part-time court of military review judges. All the other services utilize civilian reservists in that capacity to meet distinct military needs. In *U.S. v. Beckermann, supra,* then Chief Judge Everett noted the Navy's pioneer reserve judge program, which, at that time, was limited to trial judges. *Id.* at 27 M.J. 339 n.8. Since then it has been expanded to include court of military review judges of which Marine reservists are an integral component. The program for the Naval service is also no longer limited to reserve officers who are civilian judges. Reserve judges are now used on all but the Coast Guard Court of Military Review and include government attorneys, and civilian practitioners, as well as civilian judges.

While the reserve judge programs of the other service courts of military review may not be identical to that of the Navy–Marine Corps Court of Military Review, they all seem to have at least one common element, the continuing assignment of a judge to a court of military review over a long term that includes periods of inactive duty and reserve drills. In other words, these judges are not assigned anew to a court of military review every time they drill as judges or are called to active duty. It is our understanding that reserve judges are assigned to a court of military review at the outset and technically remain as members of that court after leaving active duty.

Under this arrangement, at least some of these judges are also understood to perform court work while at home in a civilian status. All judges have other primary duties in various civilian capacities making them truly part-time appellate military judges. Their utilization in a part-time capacity, as with the judges on this Court, is permitted under the Uniform Code of Military Justice to accommodate the differing military requirements between the services, while at the same time maintaining faithful adherence to the uniform structure of our system.

### 5. Resolution of the Collateral Duty Question

In our view, it would constitute an act of judicial legislation for this Court to go beyond the Article 26(c) requirements relating solely to general court-martial judges and declare that use of court of military review judges with other primary duties is prohibited. We subscribe to the words of Chief Judge Sullivan in *U.S. v. Graf, supra,* where he said with respect to the issue of fixed terms of office for military judges:

> Thus, this Court respectfully declines the invitation in the instant case to legislate by litigation. If it is right that military judges have a fixed term, let Congress by legislation or the President by rule-making, grant a fixed term to these judges. *See Chappell v. Wallace, supra* at 304. Those two branches of Government have the power and the duty to accomplish this task if, after a thoughtful and responsible factfinding process[,] either branch decides that a fixed term for military judges will better the justice the servicemembers receive. (Citation and footnote omitted)

*Id.,* 35 M.J. at 464.

That rationale applies equally to the issue of part-time judges, as does the *Graf* opinion's treatment of the question of judicial independence, which Appellant says is adversely impacted by this Court's judges having other primary duties. On this issue, Judge Cox's separate opinion in *U.S. v. Mabe,* 33 M.J. 200, 206 (C.M.A.1991) offers some insightful observations that warrant repeating since they bear directly on the question of judicial independence. Judge Cox said in *Mabe:*

> The solution to unlawful influence of military judges is not found in words; it is not found in creating tenure for them or isolating military judges from the world around them. The solution is found in selecting men and women of good character and integrity, persons who want to learn to do a good job, who want to make fair and just decisions, persons with sound judgment.

*Id.* at 33 M.J. 208

In this Court's *Beckermann* opinion, we said such matters were irrelevant to the ultimate decision because, "it is the institutional or organizational scheme by which judges are detailed ... that is of concern, not the qualities of the individual so assigned." *U.S. v. Beckermann,* 25 M.J. 870, 874 (C.G.C.M.R.1988). Appellant argues that, "[i]t is now time to determine whether appellate military judges must meet the same institutional standards that we require of general courts-martial trial judges." Appellate Defense Counsel's Brief at 12.

The problem with this argument is that "we" did not require general court-martial trial judges to meet certain institutional standards. Congress established that requirement. If those same institutional standards are to be mandated for appellate military judges, it is up to Congress to say so, not us, or any other court. Simply put, this is a matter for the legislature. Until such time as the law is changed in this regard, the solution lies in selecting men and women of good character and integrity as Judge Cox has advanced.

He found the judges in the *Mabe* case to be such persons. Appellant has not contended otherwise with respect to the judges reviewing the instant case. We, too, are satisfied that the part-time members of this Court, past and present, meet the same rigorous standards set out by Judge Cox. Judges of good character and integrity have provided this Court from its inception with the kind of judicial independence that assures due process in every case.

### Conclusion

In light of the foregoing, all of Appellant's assignments of error are rejected. We have determined that the findings and sentence are correct in law and fact, and on the basis of the entire record should be approved. Accordingly, the findings and sentence approved below are affirmed.

Judges BRIDGMAN and BASTEK concur.