**UNITED STATES, Appellee,**

v.

**Ronald D. GRAF 507 84 2092 Aviation Storekeeper Airman (E–3) U.S. Naval Reserve, Appellant.**

**NMCM No. 902010.**

U.S. Navy–Marine Corps Court of Military Review.

19 Dec. 1990.

Captain Dwight H. Sullivan, USMC, Appellate Defense Counsel.

Eugene R. Fidell, Civilian Defense Counsel.

Major Laura L. Scudder, USMC, Appellate Government Counsel.

## ORDER

ALBERTSON, Senior Judge:

Appellant comes to this Court with a motion to disqualify the panel from considering his case pursuant to Article 66(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(c). Appellant contends that the appellate judges who serve on the Court lack institutional independence because they are not protected by fixed terms of office (tenure). Appellant argues that judges who serve indeterminate terms at the pleasure of the Judge Advocate General are prohibited by the due process clause of the Fifth Amendment from reviewing appellant's case. Appellant also asserted this same lack of institutional independence at the trial level when he challenged the trial military judge for cause. One of appellant's assignments of error for Article 66(c), UCMJ, review is that the military judge erred by denying the defense challenge of him for cause because he had no fixed term of office. In the alternative, appellant contends that we should use our general supervisory authority and find that lack of tenure creates an appearance of lack of judicial independence such that the public lacks confidence in the fairness and justice of the military justice system within the Naval Service.

Appellant requested oral argument and this Court, upon receipt of the motion to disqualify, granted the request specifically directing argument on the motion to disqualify and the related assignment of error specified in appellant's pleadings. The Court heard oral argument on 11 December 1990. Upon consideration of the pleadings, the pertinent portion of the record of trial related to the issues argued orally, and the oral arguments, for the reasons set forth below, the motion is denied. We find no merit in appellant's first assignment of error. We will follow this order with a decision as to the merits of the remaining assignments of error after we complete our review of appellant's case pursuant to Article 66(c), UCMJ.

Appellant asserts that this Court can grant the motion and find merit in the assignment of error under Fifth Amendment due process principles and this Court's general supervisory authority over the military justice system within the Naval Service. Appellant has readily conceded that Fifth Amendment due process judicial precedent, statutory law, and military case precedent are against him; however, he believes that in light of the facts in *Navy–Marine Corps Court of Military Review v. Carlucci*, 26 M.J. 328 (C.M.A.1988); *United States v. Mabe*, 30 M.J. 1254 (N.M. C.M.R.1990) (*en banc*); and *Carke v. Breckenridge*, No. 893618R (N.M.C.M.R. 6 December 1990) (Unpublished), in the interests of ensuring public confidence in the fairness and justice of the military justice system within the Naval Service, this Court should reexamine the issue.

We decline to find any merit to the issue under the principles of the Fifth Amendment and rely on the Government's analysis of *Palmore v. United States*, 411 U.S. 389, 404, 93 S.Ct. 1670, 1680, 36 L.Ed.2d 342 (1973), to support our position. In *Palmore*, Justice White specifically addressed trial by courts-martial presided over by untenured military judges:

Under its Art. I, s. 8, cl. 14, power "to make Rules for the Government and Regulation of the land and naval Forces," Congress has declared certain behavior by members of the Armed Forces to be criminal and provided for the trial of such cases by court-martial proceedings in the military mode, not by courts ordained and established under Art. III. Within their proper sphere, courts-martial are constitutional instruments to carry out congressional and executive will. *Dynes v. Hoover*, 20 How. 65, 79, 82, 15 L.Ed. 838 (1857). The "exigencies of military discipline require the existence of a special system of military courts in which not all of the specific procedural protections deemed essential in Art. III trials need apply," *O'Callahan v. Parker*, 395 U.S. 258, 261, 89

S.Ct. 1683, 1685, 23 L.Ed.2d 291 (1969); and "the Constitution does not provide life tenure for those performing judicial functions in military trials." *U.S. ex rel. Toth v. Quarles,* 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). We find nothing in more recent Supreme Court precedent to support appellant's constitutional due process claim.

■ As to the use of our general supervisory authority to find that without tenure an appearance exists within the Naval Service that military judges lack judicial independence, we have considered appellant's argument in light of the recent cases he cites. His concern emphasizes the appearance of, rather than the actual, lack of judicial independence. Although he cannot identify any specific prejudice he has suffered as a result of the trial judge's lack of tenure, or even the potential specific prejudice he might suffer due to the lack of tenure of the appellate military judges of this Court, he claims that he need show only general prejudice. In support of his general prejudice claim he cites *Ward v. Village of Monroeville, Ohio,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), wherein the Supreme Court indicated that a statutory provision that required an accused to show special prejudice when moving to disqualify a judge for interest, bias, or prejudice, "requires too much and protects too little." *Id.,* 409 U.S. at 61, 93 S.Ct. at 83, 34 L.Ed.2d at 271. Both *Ward* and its predecessor, *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1926), found that the judicial officers concerned, both mayors, could not be disinterested and impartial judicial officers because they had a direct personal pecuniary interest in conviction and punishment in all cases that came before them because the mayors were responsible for village finances, and the mayor's court through fines, forfeitures, costs and fees, provided a substantial portion of the village funds. Thus, the Court held that the petitioners had been denied a trial before a disinterested and impartial judicial officer as guaranteed by the due process clause. Appellant would have us apply the same principle to his case. We certainly are bound to follow Supreme Court prece-

dent if it applies to the case under our review. Upon review of military law we find that the *Ward–Tumey* principle has been followed by military courts when they have been called upon to interpret the statutory and regulatory provisions on judicial disqualification due to improper interests, lack of impartiality, and bias and in the analogous situation of unlawful command influence claims. Both the disqualification and unlawful command influence line of cases have involved challenges to military trial and appellate judges for bias, lack of impartiality, prejudice and lack of judicial independence and integrity within the military justice system.

The military law and judicial precedent is enlightening. First, the Court of Military Appeals has held that Congress intended that "*no* judge can participate in the adjudication of a case if he is not 'a neutral and detached judge.'" *United States v. Kincheloe,* 14 M.J. 40, 48 (C.M.A.1982). Second, any relationship that casts suspicion on whether a military judge is fair or impartial provides a basis for an accused to seek his disqualification. *Id.* Third, Rule for Courts–Martial (R.C.M.) 902(b) identifies specific circumstances that are grounds for mandatory disqualification or recusal of military judges. R.C.M. 902(a) also provides for disqualification and recusal in more general terms, that is, when a military judge determines that under the circumstances of the case before him, if the facts were known by a reasonable man, his impartiality might reasonably be questioned. A military judge's denial of a challenge against him is reviewable for abuse of discretion. *United States v. Allen,* 31 M.J. 572 (N.M.C.M.R.1990). Furthermore, Articles 26, 10 U.S.C. § 826 and 66, when read in conjunction with Article 37, UCMJ, 10 U.S.C. § 837, as enforced by Article 98, UCMJ, 10 U.S.C. § 898, provide both the accused, *see id.,* and the military judge, *see e.g., Navy–Marine Corps Court of Military Review v. Carlucci,* 26 M.J. 328 (C.M. A.1988); *United States v. Mabe,* 30 M.J. 1254 (N.M.C.M.R.1990) (*en banc*), with a mechanism to bring to light, within the public forum of a court-martial, an attack

on the military judge's independence, or lack thereof, due to unlawful command influence—the perniciousness of which is the same whether it be direct or indirect. *United States v. Hagen,* 25 M.J. 78 (C.M.A. 1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 981 (1988).

Receipt of actual direct personal financial benefit by the judicial officers in *Ward* and *Tumey* was a concrete factual basis that demonstrated actual interest, bias, and prejudice, factors negating judicial impartiality. The finding of lack of impartiality was then found to be systemic. The Supreme Court found that such systemic lack of impartiality could only be dispelled by a general prejudice standard. *Per contra,* the potential improper use of the power of appointment, removal, and evaluation is not a factor affecting judicial impartiality except on an abstract basis. The potential of such abstract use of the power, in the absence of a showing of specific prejudice, cannot vitiate the impartiality of judges. Thus, we conclude that the *Ward–Tumey* principle is inapplicable to resolving appellant's assertions.

Military law has long prohibited direct or indirect unlawful command influence on subordinates by superiors in military justice matters. The unlawful influencing of military judges by superiors in the judicial chain is not an exception to that law. If factually established, such unlawful influence would be a significant factor in demonstrating a lack of judicial independence. The standard the Government must meet for dispelling unlawful command influence or its appearance is high, and includes a requirement that this Court must find that the findings and sentence of a case in which unlawful command influence is found to exist, or is erroneously found not to exist, are unaffected beyond a reasonable doubt. *United States v. Jones,* 30 M.J. 849, 854 (N.M.C.M.R.1990); *see Allen,* 31 M.J. at 591.

Both disqualification and unlawful command influence issues, however, require the presentation of a factual basis by the defense. *Allen* at 591, 607. Regardless of whether the challenge is made under R.C.M. 902, Article 37, UCMJ, or a combination thereof, the question of prejudice is never reached unless probative evidence is offered and found to support the challenge. Mere suspicion or speculation is insufficient. *Kincheloe,* 14 M.J. at 50; *Allen,* 31 M.J. at 572. It is facts, probative evidence, that the appellant lacks. He, unlike Ward and Tumey, can point to nothing but suspicion or speculation that the individual trial military judge, or the individual judges of this Court, lack the independence to hear his case impartially and without the influence of the Judge Advocate General or anyone else in the judiciary chain of command. He rejects, as disingenuous, the contention that Article 37, UCMJ, an individual judge's integrity flowing from his oaths as a judge, a lawyer, and a commissioned officer, and a judge's inherent ethical responsibility to preserve the independence and integrity of the judiciary are sufficient to ensure independent judicial decision-making. He claims that the decisions in *Carlucci* and *Mabe* have done nothing to remove the appearance of a lack of judicial independence because the violators of Article 37, UCMJ, have not been held accountable for their unlawful conduct; the appearance will persist as long as the actual is condoned.

Although appellant admits that the appearance of lack of judicial independence cannot be entirely cured under the present statutory scheme, he believes that tenure can do much to lessen the appearance of that evil. He then asserts that it is the responsibility of this Court, under its general supervisory authority over military justice within the Naval Service, to lessen that appearance so that the public can have confidence in the fairness and justice of the system.[1] Yet, he also admits that tenure will not substantially cure the core of the threat to judicial independence to which he

---

1. It is settled that appearances of judicial impropriety lessen the public's confidence in its judicial system. Such is no more true for the military than the civilian community. On the other hand, the public, as represented by its legislators—in this instance the U.S. Congress—has been aware of the issue of tenure for military judges since December 1984. Advisory Commission Report on the Military Justice Act of 1983 dated 14 December 1984. Congress has

perceives a military judge subjected. He recognizes that other adverse action can be taken by a judge's superior because of that superior's disapproval of the judge's decisions. For example, he admits that the potential judges have for receiving adverse fitness reports would remain even with tenure. In fact, tenure could even cause the prospect of adverse fitness reports to be more the bane of a judge's existence than they are under present circumstances. For example, removal as a military judge with a good fitness report with assignment to a good job would presumably not adversely affect a career; whereas a series of bad fitness reports during tenure may very well have adverse impact. Thus, tenure, even if required by this Court, would really be just one more factor on the list of systemic protections sufficient for ensuring judicial independence that could be later described as disingenuous by yet another appellant.[2] We conclude that the lessening of this abstract appearance of evil is not required by the law. Thus, we decline to exercise our general supervisory authority to effect a remedy that would have no effect, even were we to find a need for a remedy, which we do not.[3] The motion is accordingly denied. Assignment of error I is without merit.

Judges FREYER and LAWRENCE concur.

also been active in addressing their concerns on military judicial matters as evidenced by the recent amendments to the Uniform Code of Military Justice. Articles 6a and 67, UCMJ, 10 U.S.C. §§ 806a, 867. Nevertheless, it has not considered it necessary to legislate fixed terms of office for military trial and appellate judges.

2. Indeed, we can analogize the issue of independence of military judges with the impartiality of court members set forth in *U.S. v. Murphy*, 26 M.J. 454, 458 (CMA 1988): Independence can be assured by means of proper *voir dire* on the part of counsel and full disclosure by the military judge, liberality in granting challenges for cause, and compliance with the law regarding the proper utilization of fitness reports for performance of judicial duties.

3. We recognize that even though the appellant may receive appellate review of his case by the Court of Military Appeals, a court composed of civilian judges not subject even to the appearance of lack of judicial independence due to superiors in the judicial chain of command, he is entitled to a court free from any interference with its judicial independence from the very beginning. *Ward v. Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 84, 34 L.Ed.2d 267 (1972). Were we to find merit in appellant's factually unfounded assertion, or even if he had factually supported his assertion, we would not be required to grant the motion to disqualify or to find merit in the assignment of error because to do so would be contrary to the maxim of law we cited as authority in *United States v. Allen,* 31 M.J. at 601: "where all are disqualified, none are disqualified." (Citations omitted.)