**UNITED STATES**

v.

**Stephan J. PRIVE, Seaman Apprentice, U.S. Coast Guard.**

**CGCM 0050. Docket No. 984.**

U.S. Coast Guard Court of Military Review.

July 6, 1992.

Trial Counsel: LT J.A. Wilson, USCGR.

Detailed Defense Counsel: LCDR Christopher A. Abel, USCG.

Appellate Defense Counsel: LCDR G Arthur Robbins, USCG.

Appellate Government Counsel: LCDR Charles J. Bennardini, USCG.

Before Panel Five, BAUM, GRACE, SHKOR and EDWARDS[1], Appellate Military Judges.

GRACE, Judge:

The Appellant was convicted of three specifications under Article 112a of the Uniform Code of Military Justice (UCMJ) alleging possession and distribution of LSD. He was sentenced to confinement for three months, reduction to the lowest enlisted paygrade, fined $3,000.00, and given a bad conduct discharge. Pursuant to a pretrial agreement, the convening authority disapproved the fine and approved that portion of the sentence extending to reduction in rate to E–1, confinement for three months, and the bad conduct discharge.

---

1. Judge Edwards did not participate in this decision.

With the exception of the punitive discharge, the convening authority ordered the approved sentence executed.

The appellant has raised three errors before this Court.

## I

APPELLANT'S COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION.

## II

THE COURT OF MILITARY REVIEW IS WITHOUT POWER TO AFFIRM THE FINDINGS OF GUILTY AND SENTENCE BECAUSE THE APPELLATE MILITARY JUDGES ARE ASSIGNED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION.

## III

APPELLANT'S CONVICTION MUST BE SET ASIDE BECAUSE DUE PROCESS REQUIRES THAT A JUDGE IN A CRIMINAL CASE HAVE A FIXED TERM OF OFFICE. *BUT SEE UNITED STATES V. GRAF*, 32 M.J. 809 (N.M.C.M.R.1990), *PETITION GRANTED*, 33 M.J. 189 (C.M.A.1991) (MEM).

## ASSIGNMENTS OF ERROR I AND II

The first two assignments were orally argued to the Court and will be addressed together.

The U.S. Navy–Marine Corps Court of Military Review, in *United States v. Coffman*, 35 M.J. 591 (N.M.C.M.R.1992), dealt with Assignment of Error I as it applied to a special court-martial military judge. The Court assumed *arguendo* that the Appointments Clause applied to military court-martial judges and found that all military judges must be commissioned officers of the Armed Forces of the United States and, as such, have by law already been appoint-

ed by the President. The Court went on to say:

> The duties these commissioned officers are *detailed* to perform as military judges are within the sphere of their official duties and are germane to the office they already hold. A second appointment from the President to a commissioned officer to perform the duties of a military judge is simply not required. *Cf. Shoemaker v. United States*, 147 U.S. 282, 299–301, 13 S.Ct. 361, 390–391, 37 L.Ed. 170, 185 (1892) [sic] (Army officers (engineers) were not required to obtain a second appointment to perform duties on a commission created by Congress to acquire lands for a park). (Emphasis in original.)

*Id.* slip op. at 2.

We concur with our brethren on the Navy–Marine Corps Court of Military Review. However, the Appellant in this case has not only challenged the appointment of the military trial judge; he has also challenged the appointment of the judges to this Court. Rather than assuming *arguendo* that the Constitution's Appointments Clause applies to the designation of judges under the UCMJ, we feel that this case compels us to address this issue directly.

This Court can find no Supreme Court decision that specifically addresses the issue of the appointment of judges to general courts-martial or to the Courts of Military Review. Nor can we find a case which grants to Congress an exception from the Appointments Clause. Therefore, we must examine the principles enunciated by the Supreme Court for guidance in the resolution of this issue of first impression.

Before beginning our search, we will discuss the constitutional and statutory provisions at issue.

## THE APPOINTMENTS CLAUSE

Clause 2, § 2 of Article II of the Constitution is known as the Appointments Clause:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of

the [S]upreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

## DESIGNATION OF JUDGES UNDER THE UCMJ

The military justice system is a creation of the Congress. Its current iteration is found in the UCMJ (10 U.S.C. § 801 *et seq.*)

Military trial judges and Court of Military Review judges are provided for in the UCMJ, Articles 26 and 66, 10 U.S.C. § 826 and § 866. These articles vest authority over such judges in the Judge Advocate General of the respective armed force.

Article 26(b) provides that:

A military judge shall be a commissioned officer of the armed forces who is a member of the bar of a Federal court or a member of the bar of the highest court of a State and who is certified to be qualified for duty as a military judge by the Judge Advocate General of the armed force of which such military judge is a member. (10 U.S.C. § 826(b)).

Subparagraph (c) of the same Article says that "[t]he military judge of a general court-martial shall be designated by the Judge Advocate General, or his designee, of the armed force of which the military judge is a member...." (10 U.S.C. § 826(c)).

A Court of Military Review has been established by each Judge Advocate General pursuant to Article 66, UCMJ.

(a) Each Judge Advocate General shall establish a Court of Military Review which shall be composed of one or more panels, and each such panel shall be composed of not less than three appellate military judges ... Appellate military judges who are assigned to a Court of Military Review may be commissioned officers or civilians, each of whom must be a member of a bar of a Federal court or the highest court of a State. The Judge Advocate General shall designate as chief judge one of the appellate military judges of the Court of Military Review established by him. The chief judge shall determine on which panels of the court the appellate judges assigned to the court will serve and which military judge assigned to the court will act as the senior judge on each panel. (Art. 66(a), UCMJ, 10 U.S.C. § 866(a)).

■ Although Article 66 does not specifically state that the Judge Advocate General of the respective service will designate the members of the Military Courts of Review, it does say "[e]ach Judge Advocate General shall establish a Court of Military Review ..." and "[t]he Judge Advocate General shall designate as chief judge one of the appellate military judges of the Court of Military Review established by him." Art. 66(a) UCMJ. A fair reading of those provisions leads to the inevitable conclusion that the Judge Advocate General has the power to designate the judges of the Courts of Military Review. That is how the statute has been interpreted since its passage. The military judge in this case and the judges of this Court were all assigned as judges pursuant to the terms of the UCMJ. That fact has not been challenged by the Appellant.

The Appellant's assignments of error rely on the holding of the Supreme Court in *Freytag v. Commissioner of Internal Revenue* (C.I.R.), —— U.S. ——, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991), that special judges of the Tax Court, as "inferior officers of the United States," must be appointed by either the President, a court of law or a head of department, as required by the Appointments Clause. The Appellant argues that members of this Court and the trial judge are also "officers" or "inferior officers" of the United States and, therefore, must be appointed in compliance with the Constitution's Appointments Clause. He contends that appointment by the Judge Advocate General, who is not a head of department, does not meet the terms of that clause. As a result, according to the Appellant, the appointments of the trial judge and the judges of this Court were

constitutionally defective, leaving both courts without jurisdiction.

## OFFICERS AND INFERIOR OFFICERS OF THE UNITED STATES

Since the Appointments Clause, by its terms applies only to the appointment of "officers" and "inferior officers," we must first determine whether general court-martial judges and judges of this Court fall within those terms. If we find that those positions are not filled by officers, but by mere employees, our examination ends because the Appointments Clause would then not apply.

One commentator on constitutional powers has said the following about officers and employees of the government:

> All federal offices are included within one or another of these modes of appointment: their incumbents are either (1) officers who must be appointed by the President and confirmed by the Senate or (2) they are "inferior Officers" whose appointment may be vested by law in the President alone, the courts, or department heads.
>
> . . . .
>
> . . . . The practical operation of government has, however, given rise to a third category of persons performing federal functions, who constitute by far the most numerous part of the federal service. The persons in this category are designated as "employees" of the United States. The term covers the vast majority of subordinate officials of the Federal Government—over two million of them—who have received appointment at the hands of officials other than those stated in the Constitution as capable of being vested by the Congress with the appointing power. Such employees may be appointed in any manner specified by law. It has been said, in fact, that anyone working for the Government, not appointed in the manner prescribed by Article II, is not an "officer" but an agent or employee of the Government. In practice, this has enabled appointment to most federal jobs to be made by officers whose own position is lower than that of department heads. (Footnotes omitted.)

2 B. Schwartz, A Commentary on the Constitution of the United States 45–47 (1963).

In order to determine if a position in the government is filled by an officer, the Supreme Court has looked at the duties required of that position. "[A]ny appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by § 2, cl. 2, of [Art. II]." *Buckley v. Valeo*, 424 U.S. 1, 126, 96 S.Ct. 612, 685, 46 L.Ed.2d 659 (1976).

The Supreme Court in *Freytag v. C.I.R.*, *supra*, looked at the duties performed by special trial judges in the Tax Court of the United States to determine whether or not they were employees or "inferior officers" of the United States. It found that the special trial judges performed more than ministerial tasks. "They take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders. In the course of carrying out these important functions, the special trial judges exercise significant discretion." *Id.* 111 S.Ct. at 2640. General court-martial judges exercise similar discretion. They take testimony, conduct trials, rule on the admissibility of evidence and, where special trial judges of the Tax Court made recommendations to the chief judge for findings, military judges render final decisions on the law and in some cases on the facts. Those decisions are subject only to appellate review.

The Courts of Military Review exercise "awesome plenary powers" which include affirmation of only such findings of guilty and sentences that they find correct in law and fact. *United States v. Cole*, 31 M.J. 270, 272 (C.M.A.1990). They are authorized to "weigh the evidence, judge the credibility of the witnesses, and determine controverted questions of fact." They can set aside findings and sentence and can order rehearings. Art. 66 UCMJ, 10 U.S.C. § 866. The Courts of Military Review also

have "extraordinary writ" power. *Dettinger v. United States*, 7 M.J. 216 (C.M.A. 1979).

■ When the duties and authority of both general court-martial military judges and judges of the Court of Military Review are compared to those of special trial judges of the Tax Court, it appears that the judges in the military are at least "inferior officers of the United States" and not mere employees. We so hold.

Having found that the judges who are the subject of this appeal are "officers," we must now begin our search for those guiding principles laid down by the Supreme Court which will lead us to an answer to the question of whether there is a constitutionally valid method of designating such judges by a means other than that provided for in the Appointments Clause.

## CONGRESS' AUTHORITY TO MAKE RULES FOR THE GOVERNMENT AND REGULATION OF THE LAND AND NAVAL FORCES

■ The Constitution grants to Congress certain enumerated powers in Article I, including the power "to provide and maintain a navy" and "to make Rules for the Government and Regulation of the land and naval Forces." It is that authority we must examine in relation to the Article II Appointments Clause.

In a long line of cases, the Supreme Court has recognized and explained Congress' extraordinary powers to regulate the military. Through this line of cases the Supreme Court has clearly demonstrated that Congress has special authority when it comes to regulating the military. In one of the earliest cases to address the issue the Court said:

These provisions show that Congress has the power to provide for the trial and punishment of military and naval offences in the manner then and now practiced by civilized nations; and that the power to do so is given without any connection between it and the 3d article of the Constitution defining the judicial power of the United States; indeed, that the two

powers are entirely independent of each other.

*Dynes v. Hoover*, 20 How. 65, 79, 61 U.S. 65, 79, 15 L.Ed. 838 (1857).

Following *Dynes v. Hoover, supra*, the Court has repeatedly restated that proposition. "Congress has declared the kinds of trial and the manner in which they shall be conducted...." *Ex parte Milligan*, 4 Wall. 2, 123, 71 U.S. 2, 123, 18 L.Ed. 281, 296 (1866). "Each [the power to legislate and the power to execute laws relating to the military] includes all authorities essential to its due exercise." *Id.* at 139. "Indeed, Congress has taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights." *Burns v. Wilson*, 346 U.S. 137, 140, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508 (1953). "Within their proper sphere, courts-martial are constitutional instruments to carry out congressional and executive will." *Palmore v. U.S.*, 411 U.S. 389, 404, 93 S.Ct. 1670, 1679, 36 L.Ed.2d 342 (1973). "[M]ilitary tribunals have not been and probably never can be constituted in such a way that they can have the same kind of qualifications that the Constitution has deemed essential to fair trials of civilians in federal courts." *U.S. ex rel. Toth v. Quarles*, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). "This Court has long recognized that the military is, by necessity, a specialized society separate from civilian society.... [T]he military has, again by necessity, developed laws and traditions of its own during its long history." *Parker v. Levy*, 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439, 451 (1974). "The laws and traditions governing [military] discipline have a long history ... they are founded on unique military exigencies as powerful now as in the past. Their contemporary vitality repeatedly has been recognized by Congress." *Schlesinger v. Councilman*, 420 U.S. 738, 757, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591, 609 (1975). "It [the exercise by Congress and the Executive of the power to establish and administer courts-martial] too involves a constitutional grant of power that has been historically understood as giving the political Branches of Govern-

ment extraordinary control over the precise subject matter at issue." *Northern Pipeline Construction v. Marathon Pipe Line Co.,* 458 U.S. 50, 66, 102 S.Ct. 2858, 2869, 73 L.Ed.2d 598 (1982).

Another principle was stated in *Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), when the Court said:

Decisions of this Court after *O'Callahan [v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969)] have also emphasized that *Congress has primary responsibility for the delicate task of balancing the rights of servicemen against the needs of the military.* As we recently reiterated, " '[j]udicial deference ... is at its apogee when legislative action under the congressional authority to raise and support armies and make rules and regulations for their governance is challenged.' " (Emphasis added and citations omitted.)

*Id.* at 447, 107 S.Ct. at 2931.

Some of the cases where the Court has adhered to this principle are: *Goldman v. Weinberger,* 475 U.S. 503, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) (free exercise of religion); *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (racial discrimination); *Rostker v. Goldberg,* 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (sex discrimination); *Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980) (free expression); *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976) (right to counsel in summary court-martial proceedings); *Schlesinger v. Councilman, supra,* (availability of injunctive relief from an impending court-martial); and *Parker v. Levy, supra* (due process rights and freedom of expression).

The constitutional grant of power to Congress to regulate the Armed Forces, Art. I, § 8, cl. 14, appears in the same section as do the provisions granting Congress authority, *inter alia,* to regulate commerce among the several States, to coin money, and to declare war. On its face there is no indication that the grant of power in Clause 14 was any less

plenary that the grants of other authority to Congress in the same section. Whatever doubts there might be about the extent of Congress' power under Clause 14 to make rules for the "Government and Regulation of the land and naval Forces," *that power surely embraces the authority to regulate the conduct of persons who are actually members of the Armed Services.* (Emphasis added.)

*Solorio v. United States, supra,* 483 U.S. at 441, 107 S.Ct. at 2928.

Just one year earlier the Court had said:

Our review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society....

In the context of the present case, when evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest.

*Goldman v. Weinberger, supra,* 475 U.S. at 507, 106 S.Ct. at 1313.

Certain constitutional rights are given up upon entry into the armed forces. Specifically, the Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, *except in cases arising in the land or naval forces....*" (Emphasis added.) U.S. Const., Amdt. V. In each of the cases mentioned the Court was balancing the protection of individual rights guaranteed by the Constitution and its amendments, especially the Bill of Rights, against special military necessities.

In *Parker v. Levy, supra,* the Court said:

This Court has long recognized that the military is, by necessity, a specialized society separate from civilian society. We have also recognized that the military has, again by necessity, developed laws and traditions of its own during its long history. The differences between the military and civilian communities re-

sult from the fact that "it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise." *United States ex rel. Toth v. Quarles,* 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955).

*Id.* 417 U.S. at 743, 94 S.Ct. at 2555–56.

Finally in *Rostker v. Goldberg, supra,* the Court said:

This is not, however, merely a case involving the customary deference accorded congressional decisions. The case arises in the context of Congress' authority over national defense and military affairs, and perhaps in no other area has the Court accorded Congress greater deference....

. . . .

None of this is to say that Congress is free to disregard the Constitution when it acts in the area of military affairs. In that area, as any other, Congress remains subject to the limitations of the Due Process Clause, but the tests and limitations to be applied may differ because of the military context. We of course do not abdicate our ultimate responsibility to decide the constitutional question, but simply recognize that the Constitution itself requires such deference.... (Citations omitted.)

*Rostker v. Goldberg, supra,* 453 U.S. at 64–67, 101 S.Ct. at 2651–53.

 It is clear from the cases cited that Congress has authority to establish rules for the government and regulation of the land and naval forces. It is also clear that when the Congress acts under that authority the Supreme Court grants great deference to Congress' judgment, especially in the area where individual rights must yield to overriding military necessity.

In the case at hand, however, the issue is not one of the individual freedoms spelled out in the Bill of Rights, but rather the application of the Article II Appointments Clause, a provision that is a part of the separation of powers.

The roots of the separation-of-powers concept embedded in the Appointments Clause are structural and political. Our separation-of-powers jurisprudence gen-

erally focuses on the danger of one Branch's aggrandizing its power at the expense of another Branch. The Appointments Clause not only guards against this encroachment but also preserves another aspect of the Constitution's structural integrity by preventing the diffusion of the appointment power. (Citation omitted.)

*Freytag v. C.I.R., supra,* 111 S.Ct. at 2638.

The question remains whether the Supreme Court would expand that deference to exempt the Congress from the operation of the Appointments Clause when legislating for the military. There is at least one case in which the Supreme Court found an exemption for Congress in a constitutional provision. In *Northern Pipeline Construction v. Marathon Pipe Line Co., supra,* the Supreme Court looked at Congress' exercise of authority in creating bankruptcy judges that were not Article III judges with life tenure and the protection of not having their salaries reduced while in office. The Court had no doubt that the bankruptcy judges created by act of Congress were not Article III judges. That left the question whether the Bankruptcy Act of 1978 violated the command of Article III that the judicial power of the United States must be vested in courts whose judges enjoy the protections and safeguards specified in that Article. *Id.* 458 U.S. at 62, 102 S.Ct. at 2867. The Court looked at three specific areas where Congress had acted to create "legislative courts" under Article I that did not have to have the attributes of Article III courts.

But when properly understood, these precedents represent no broad departure from the constitutional command that the judicial power of the United States must be vested in Art. III courts. Rather, they reduce to three narrow situations not subject to that command, each recognizing a circumstance in which the grant of power to the Legislative and Executive Branches was historically and constitutionally so exceptional that the congressional assertion of a power to create legislative courts was consistent

with, rather than threatening to, the constitutional mandate of separation of powers. (Footnote omitted.)

*Id.* at 63–64, 102 S.Ct. at 2867–68.

One of the three "narrow situations not subject to [Art. III]" was courts established in the military justice system. What the Court said about Congress' authority to establish a system of military justice is instructive. "It too involves a constitutional grant of power that has been historically understood as giving the political Branches of Government extraordinary control over the precise subject matter at issue." *Id.* at 66, 102 S.Ct. at 2869.

We must balance the concerns for the separation of powers articulated in *Freytag v. C.I.R., supra,* with the deference the Court has exercised in congressional legislation relating to the military and the recognized exemption for military courts from the judicial power of the United States found in *Northern Pipeline Construction v. Marathon Pipe Line Co., supra.*

In *Freytag v. C.I.R., supra,* the Court rejected the argument that the Court defer to the Executive Branch's decision that there was no legislative encroachment on presidential prerogatives under the Appointments Clause, since the structural interests implicated in the case were those of the Executive Branch which could look out for itself. *Id.* 111 S.Ct. at 2639.

The structural principles embodied in the Appointments Clause do not speak only or even primarily of Executive prerogatives simply because they are located in Article II. The Appointments Clause prevents Congress from dispensing power too freely; it limits the universe of eligible recipients of the power to appoint. Because it articulates a limiting principle, the Appointments Clause does not always serve the Executive's interests.... The structural interests protected by the Appointments Clause are not those of any one Branch of government but of the entire Republic. (Citation omitted.)

*Id.* 111 S.Ct. at 2639.

That is a clear statement of the law as it applies generally to the Executive and Legislative Branches of government. However, the Court in making that statement did not have before it the issue that is present in this case, *i.e.* the deference that must be granted the Congress when legislating with regard to the military. When that factor is added to the scales, we do not believe that the careful balance crafted by the Framers of the Constitution between the Branches of Government is upset.

This exception is being applied to a specialized system of criminal justice within a specialized society, the military. The judges in question are selected on the basis of unique qualifications of experience and knowledge of the military justice system. These selections are not political in nature. They are made by the Judge Advocate General, one who has a direct responsibility for the administration of military justice. Because of the uniqueness of the relationship of the Congress to the military; long recognized by the Supreme Court, we find that the Congress' action in providing for a means of designating military judges by other than the provisions of the Appointments Clause is in keeping with the precedents announced by the Supreme Court. This exception to the application of the Appointments Clause does not do harm to the basic structural foundation of government. To paraphrase the Court in *Northern Pipeline Construction v. Marathon Pipe Line Co., supra,* when properly understood, these precedents represent no broad departure from the constitutional command that *appointments must be made in accordance with the Appointments Clause.* Rather, they reduce to a narrow situation not subject to that command, that recognizes a circumstance in which the grant of power to the Legislative and Executive Branches was historically and constitutionally so exceptional that the congressional assertion of a power to *designate military judges outside of the provisions of the Appointments Clause* was consistent with, rather than threatening to, the constitutional mandate of separation of powers.

Rather than harm the constitutional separation of powers it is consistent with the

Supreme Court's often voiced holdings that Congress is to be granted deference when legislating with respect to the military. It is reasonable to expect that the Court would respect Congress' decision that the Judge Advocate General is the most appropriate official to assign judges in the military justice system.

We, therefore, conclude that Congress, in legislating for the land and naval forces, may provide for the designation of judges within the military justice system in a manner not provided for in the Appointments Clause of the Constitution. Thus, we find that the designation of the military general court-martial judge and the judges of the Coast Guard Court of Military Review was proper and was not in violation of the Constitution.

## ASSIGNMENT OF ERROR III

The issue raised in Appellant's third assignment of error, (filed as a supplemental summary assignment after oral argument was heard on Assignments of Error I and II) that the failure of judges in the military justice system to be appointed to fixed terms results in a lack of due process, has been decided this date by another panel of this Court after full briefing. In *U.S. v. Ryder*, 34 M.J. 1259 (C.G.C.M.R.1992), the same assignment of error was rejected on the basis of *United States v. Graf*, 32 M.J. 809 (N.M.C.M.R.1990), *Petition Granted*, 33 M.J. 189 (C.M.A.1991) (MEM.). We find that decision dispositive.

In light of the foregoing, Appellant's assignments of error are rejected. We have reviewed the record in accordance with our responsibilities under Art. 66, UCMJ and we find no errors which materially prejudice the substantial rights of the accused nor do we consider the sentence to be excessive. The findings and sentence are correct in law and fact and should be approved. Accordingly, the findings and sentence, as approved below, are affirmed.

Judge SHKOR concurs.

BAUM, Chief Judge (concurring).

I concur with Judge Grace and write separately simply to underscore certain observations. As Judge Grace points out with ample case support, the U.S. Supreme Court has consistently treated the military in a distinctly different fashion from civilian society when applying constitutional provisions. Great deference is accorded the judgment of Congress in the exercise of its authority under Art. I, § 8, cl. 14 of the Constitution of the United States: "To make Rules for the Government and Regulation of the land and naval Forces." For me, that outlook may be illustrated best by the opinion in *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), where a unanimous Supreme Court exempted the military from constitutional tort actions available in the civilian sector against government authorities. Some of the language of that opinion has particular relevance to the issue before this Court:

> The need for special regulations in relation to military discipline, and the consequent need and justification for a special and exclusive system of military justice, is too obvious to require extensive discussion.... The special status of the military has required, the Constitution has contemplated, Congress has created, and this Court has long recognized two systems of justice, to some extent parallel: one for civilians and one for military personnel.

*Chappell v. Wallace*, 462 U.S. 296, 300, 303–304, 103 S.Ct. 2362, 2365, 2367.

The Court concluded that: "Taken together, the unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." *Chappell v. Wallace*, 462 U.S. 296, 304, 103 S.Ct. 2362, 2367. Those very same factors can just as easily lead to the conclusion that it would be inappropriate to require appointment of military judges in strict compliance with Art. II, § 2, cl. 2 of the Constitution.

Finally, the words of former Chief Justice Warren, quoted with approval by then Chief Justice Burger in *Chappell v. Wallace, supra,* seem particularly apt: "[T]he special relationships that define military life have 'supported the military establishment's broad power to deal with its own personnel. The most obvious reason is that courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have.'" Warren, [The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 188 (1962)] *Id.* at 305, 103 S.Ct. at 2368.

For all of these reasons, I believe it would be a significant departure from precedent for this Court or any other court to declare that trial and appellate military judges must be appointed as judges under the terms of the Appointments Clause of the Constitution, Art. II, § 2, cl. 2 rather than in the manner devised by Congress pursuant to Art. I, § 8, cl. 14. This conclusion is reinforced by the fact that the legislation on this subject seems to call for assignment or detailing to military duty as a judge rather than judicial appointment.[1]

Nowhere in the UCMJ is it provided that military judges, trial or appellate, will be appointed.[2] Instead, military judges are assigned or detailed to their duties as need-

---

**1.** The military duty aspect of assignment as a judge was addressed in a congressionally mandated study ordered as part of the Military Justice Act of 1983. It accounted in large part for a recommendation against tenure for military judges. It also prompted the three dissenting members of the study commission to recommend a modified form of tenure to accommodate military duty requirements. In making its recommendation against tenure, the commission found that military judges enjoy judicial independence under the present system administered by the Judge Advocates General. *Military Justice Act of 1983's ADV. COMM. REP.,* Vol. 1, at 9 (1984). Perhaps the time has come for Congress to look anew at this subject in view of developments reflected in cases since then such as *U.S. v. Allen,* 33 M.J. 209 (C.M.A.1991); *U.S. v. Mabe,* 33 M.J. 200 (C.M.A.1991) and *Navy–Marine Corps Court of Military Review v. Carlucci,* 26 M.J. 328 (C.M.A.1988). See also Baum and Barry, *United States Navy–Marine Corps Court of Military Review v. Carlucci: A Question of Judicial Independence,* Federal Bar News & Journal (June, 1989). If the subject is revisited, Congress would do well to address the questions concerning Article I court status of Courts of Military Review raised by this Court in *Combest v. Bender,* 43 C.M.R. 899 (C.G.C.M.R. 1971). Justice Scalia's views concerning executive agencies which adjudicate, as expressed in his *Freytag* concurring opinion, *Freytag v. C.I.R.,* 111 S.Ct. at 2654–2657, and joined by three other justices, give added reason for Congressional action on the points outlined in *Combest v. Bender,* 43 C.M.R. 903–904.

**2.** Art. 26, UCMJ relates to military judges for general and special courts-martial. It provides in pertinent part as follows:

(a) A military judge shall be *detailed* to each general court-martial. Subject to regulations of the Secretary concerned, a military judge may be *detailed* to any special court-martial. The Secretary concerned shall prescribe regulations providing for the manner in which military judges are *detailed* for such courts-martial and for the persons who are authorized to detail military judges for such courts-martial....

(b) A military judge shall be a commissioned officer of the armed forces who is a member of the bar of a Federal court or a member of the bar of the highest court of a State and who is *certified to be qualified for duty as a military judge* by the Judge Advocate General of the armed force of which such military judge is a member.

(c) The military judge of a general court-martial shall be *designated* by the Judge Advocate General, or his designee, of the armed force of which the military judge is a member for *detail* in accordance with regulations prescribed under subsection (a) ... A commissioned officer who is *certified to be qualified for duty as a military judge* of a general court-martial may perform such duties only when he is *assigned* and directly responsible to the Judge Advocate General, or his designee, of the armed force of which the military judge is a member.... (Emphasis added)

Art. 66, UCMJ provides for Court of Military Review judges as follows:

(a) Each Judge Advocate General shall *establish* a Court of Military Review which shall be composed of one or more panels, and each such panel shall be composed of not less than three appellate military judges ... Appellate military judges who are *assigned* to a Court of Military Review may be commissioned officers or civilians, each of whom must be a member of a bar of a Federal court or the highest court of a State. The Judge Advocate General shall *designate* as chief judge one of the appellate military judges of the Court of Military Review established by him. The chief judge shall determine on which panels of the court the appellate judges *assigned* to the court will serve and which military judge *assigned* to the court will act as the senior judge on each panel. (Emphasis added)

ed, just as with other military duties. As commissioned officers, they may be reassigned to nonjudicial duties at the will of the Judge Advocate General to meet the needs of the service.

The only exception to this general scheme of things would appear to be at the Court of Military Review level where Art. 66, UCMJ authorizes assignment of civilians as well as commissioned officers. In point of fact, there are no civilians presently assigned to any Court of Military Review. The Coast Guard Court, thought to have been the one exception, turns out to harbor no civilians. Both Judge Bridgman, who is assigned to another panel of this Court, and I believed ourselves to be civilian judges, but in 1990 Congress made it clear that we are not. In that year the UCMJ was amended by the following addition to Art. 142:

> "For purposes of appointment of judges to the court [U.S. Court of Military Appeals], a person retired from the armed forces after 20 or more years of active service (whether or not such person is on the retired list) shall not be considered to be in civilian life."

Art. 142(b)(4), UCMJ, 10 U.S.C. § 942(b)(4).

Before his current assignment to this Court, Judge Bridgman retired as a captain from the U.S. Coast Guard after more than 20 years of active service and I retired as a captain from the U.S. Navy after more than 20 years of active service before my assignment here. Accordingly, the rationale of *U.S. v. Coffman*, 35 M.J. 591 (N.M.C.M.R.1992), would appear to apply equally to all judges on this Court. Retired and active duty alike, we were all appointed as commissioned officers to the rank of captain by the President with the advice and consent of the Senate and have been assigned to the U.S. Coast Guard Court of Military Review by the General Counsel of the Department of Transportation in his capacity as Judge Advocate General of the Coast Guard.[3] Our designation and assignment as appellate military

judges has been strictly in accord with the Congressional "Rules for the Government and Regulation of the land and naval Forces." Moreover, the terms of Art. II, § 2, cl. 2 of the United States Constitution have been met, as well, by our Presidential appointment as commissioned officers.