## UNITED STATES

v.

**Nathaniel T. JENNINGS, 227 27 0425, Religious Program Specialist Third Class (E–4), U.S. Navy.**

**NMCM 92 0466.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 4 Dec. 1991.

Decided 30 Dec. 1992.

LT J.A. Douglas, JAGC, USNR, Appellate Defense Counsel.

Col John R. Roe, USMCR, Appellate Defense Counsel.

LT Ralph G. Stiehm, JAGC, USNR, Appellate Government Counsel.

Before LARSON, Chief Judge, and STRICKLAND and ORR, Senior Judges.

ORR, Senior Judge:

Consistent with his plea, the appellant was convicted of a single specification of committing sodomy in violation of Article 125, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 925. He was sentenced by the military judge sitting alone to receive a bad-conduct discharge. The convening authority approved the sentence as adjudged and forwarded the record of trial for our review in accordance with Article 66, UCMJ, 10 U.S.C. § 866. Before this Court, the appellant assigns four errors in the conduct of his trial.[1]

---

1.  I. THE AWARDING OF A BAD CONDUCT DISCHARGE FOR ONE ACT OF HOMOSEXUAL BEHAVIOR TO AN ACCUSED WITH AN EXCELLENT SERVICE RECORD WHERE SUCH BEHAVIOR WAS NOT ACCOMPANIED

## I.

In the first of these assignments of error, the appellant argues that the sole punishment awarded in this case is inappropriate because the crime he was convicted of was not aggravated under criteria published in article 3630400 of the Naval Military Personnel Manual (NAVMILPERSMAN) and that, if he should be discharged at all, it should be done administratively. The facts of the case are, essentially, that the appellant was observed in a parked motor vehicle in a recreational and picnic area aboard Camp Lejeune about 0300–0400 performing fellatio on a lance corporal.

■ In the first place, the NAVMIL-PERSMAN does not purport to establish sentencing criteria for courts-martial. Article 3630400 appears in a section of the NAVMILPERSMAN titled "Enlisted Administrative Separation". NAVMILPERSMAN at xix. From its content, article 3630400 was intended to: (a) establish and publish criteria for decisions by the Chief of Naval Personnel whether to retain or administratively separate service members who engage in, attempt to engage in, or solicit another to engage in a homosexual act or acts; (b) identify other circumstances in which a service member should be administratively separated for reasons related to homosexuality; and, (c) establish and publish criteria for characterizing the type of discharge, particularly under conditions other than honorable, for service members administratively separated for reasons related to homosexuality.

■ Even if we were to consider the seven circumstances identified in the NAVMILPERSMAN for determining whether a discharge under Other Than Honorable Conditions should be given, any one of which could be sufficient for that purpose under the terms of the manual, to be relevant to court-martial sentencing, we would conclude, contrary to the appellant's contention that none of these factors "can reasonably be said to apply" to the appellant, that at least three of the seven circumstances exist in this case. First, the victim was junior to the appellant, who was a petty officer; second, the incident occurred in an area open to public view; and third, the incident occurred on a military installation under circumstances that would have an adverse impact on discipline, good order, and morale.

In addition, there is nothing in the record of trial to support the appellant's contention that the military judge perceived his sentencing role as "a one man administrative discharge board" nor are we "fully aware that cases such as appellant's are virtually always dealt with administratively rather than punitively." Even considering the appellant's unblemished disciplinary record and excellent performance record, we find no merit in this assignment of

BY ANY AGGRAVATING FACTORS IS INAPPROPRIATE.
II. THE PROVISION IN THE PRETRIAL AGREEMENT THAT REQUIRED APPELLANT, IN THE EVENT A BAD CONDUCT DISCHARGE WAS AWARDED, TO SUBMIT A REQUEST FOR "VOLUNTARY" APPELLATE LEAVE IN RETURN FOR THE CONVENING AUTHORITY'S AGREEMENT TO SUSPEND CONFINEMENT VIOLATES PUBLIC POLICY, AND APPELLANT'S 6TH AMENDMENT RIGHT TO COUNSEL.
III. THE COURT–MARTIAL HAD NO JURISDICTION BECAUSE THE MILITARY JUDGE'S LACK OF A FIXED TERM OF OFFICE LEFT THE MILITARY JUDGE INSUFFICIENTLY INDEPENDENT TO SATISFY THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE. *BUT SEE UNITED STATES V. GRAF,* 32 M.J. 809 (N.M.C.M.R.1990), *PETITION GRANTED,* 34 M.J. 169 (C.M.A.1991). BECAUSE THE ERROR IS JURISDICTIONAL

AND THE RECORD CONTAINS NO EVIDENCE OF A *KNOWING* WAIVER OF APPELLANT'S RIGHT TO AN INDEPENDENT MILITARY JUDGE, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL. [Footnote omitted.]
IV. APPELLANT'S COURT–MARTIAL LACKED JURISDICTION BECAUSE APPELLANT'S MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. *See generally* U.S. Const. Art. II, § 2, cl. 2; *FREYTAG V. COMMISSIONER OF INTERNAL REVENUE,* [—— U.S. ——] 111 S.CT. 2631 [115 L.Ed.2d 764] (1991). BECAUSE THIS ERROR IS JURISDICTIONAL, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL. *BUT SEE UNITED STATES V. COFFMAN,* 35 M.J. 591, NO. 92 0130 (N.M.C.M.R. JUNE 3, 1992). [Footnote omitted.]

error. Based upon our review of the record of trial, we conclude that a bad-conduct discharge is an appropriate punishment under the circumstances of this case.

## II.

■ In his second assignment of error the appellant points to a provision in his pretrial agreement that required the convening authority to suspend all confinement if a bad-conduct discharge was adjudged and if the appellant submitted a voluntary appellate leave request the day of trial.[2] The appellant contends that this aspect of the agreement violates a public policy embodied in Rule for Courts–Martial (R.C.M.) 1107. In pertinent part, R.C.M. 1107(b)(3)(A) states: "Before taking action, the convening authority shall consider: (i) The result of trial; (ii) The recommendation of the staff judge advocate or legal officer under R.C.M. 1106, if applicable; and (iii) Any matters submitted by the accused under R.C.M. 1105 or, if applicable, R.C.M. 1106(f)." R.C.M. 1107(d)(2) also provides: "The convening authority shall approve that sentence which is warranted by the circumstances of the offense and appropriate for the accused...." The appellant states that these provisions require that the convening authority consider matters developed during trial and submitted posttrial—matters the convening authority may not know at the time the pretrial agreement was concluded—before taking action on the case. The appellant then argues that, by including such a provision in the pretrial agreement, "the convening authority has obviously demonstrated, for all practical purposes, that he will not under any circumstances consider disapproving or suspending the punitive discharge, regardless of the facts contained in the record of trial, the staff judge advocate's recommendation or a request for clemency." Appellant's Brief at 11–12.

We disagree with the appellant's factual premise. The provision does not restrict the convening authority's discretion to approve, disapprove, or suspend a discharge. In fact, the convening authority is not even required to approve the appellant's voluntary leave request. The provision only requires the convening authority to suspend any sentence to confinement if the appellant submits a timely request for voluntary appellate leave.

■ We recently discussed public policy concerns in the context of pretrial agreements in courts-martial and determined that "[p]retrial agreement provisions are contrary to 'public policy' if they interfere with court-martial fact-finding, sentencing, or review functions or undermine public confidence in the integrity and fairness of the disciplinary process...." *United States v. Cassity*, 36 M.J. 759, 762 (N.M.C.M.R.1992) (citations omitted). As we have indicated, we find no interference with the convening authority's review functions nor any aspect of this provision that would undermine public confidence in the integrity and fairness of the disciplinary process. Consequently, we conclude that the provision does not violate public policy or R.C.M. 1107.

■ In addition to his public policy argument, the appellant also asserts that the provision interferes with his Sixth Amendment right to counsel. He claims this provision is included in the agreement so that he can be sent home in the event he is released from confinement before the convening authority has acted on the case rather than the command sending him home on involuntary appellate leave after acting on the case. While that might be partially true in some cases, it seems unlikely to have been the reason such a provision was included in this case. We note initially that we have no evidence of what the negotiations actually were in this case.

**2.** The agreement also provides that the convening authority will suspend all forfeitures of pay if a bad-conduct discharge is adjudged. This provision does not require the appellant to submit a voluntary appellate leave request. Neither provision, however, actually applied in this case because the sentence adjudged included neither confinement nor forfeitures. Nevertheless, we do not consider the issue raised by the appellant to be moot since the appellant entered his plea based upon the conditions and protections negotiated in the agreement.

We have some doubt, however, that the Government would have proposed a provision that effectively precluded *any* service of confinement by the appellant. Usually such a provision is proposed by an accused who wants to limit confinement and who includes the voluntary leave request as an inducement to the Government to agree to such a limitation. Voluntary appellate leave does have post-trial administrative benefits and cost savings for the Government that do not exist if involuntary appellate leave is invoked.

Even if we accepted the appellant's premise that the voluntary leave provision was included in the agreement at the Government's insistence, there is no evidence and the appellant does not claim that his early return home *actually* interfered with the exercise of any of his post-trial rights. Rather, he relies upon a general list of potential problems to support his assertion that the provision makes meaningful contact between the appellant and his counsel extremely difficult.

> As anyone who has ever represented an accused at the trial level knows ... many of these individuals are reluctant to give correct telephone numbers or addresses ...; many service members ... do not have access to telephones ...; [m]ail delivery ... can be slow ...; [f]requently, mail is received by a family member but not delivered to the accused ...; [and] it can be very difficult to explain complex legal theories over the phone or ... by mail....

Appellant's Brief at 14–15. As we have indicated, however, there is nothing in the record of trial to indicate that the trial defense counsel in this case actually encountered *any* of these problems.

In addition, the appellant argues that the time spent by an accused with his unit after release from confinement vice going home "can be crucial" to the development of a meaningful clemency request and that the separation of an accused from his counsel makes it difficult for the counsel to "remain attentive to his client's needs." Since the sentence adjudged in this case did not include confinement, if the appellant submitted a voluntary appellate leave request it certainly could not have been in the expectation that the convening authority would be required to suspend a non-existent sentence to confinement. If the appellant wanted to be retained and wanted to utilize the lapse of time that might occur between the day the sentence was adjudged and the day the convening authority acted on the case to make a more effective argument for clemency, he simply had to forego submitting the voluntary leave request. We do not see how this aspect of the appellant's argument is relevant to his situation, and we have no basis on which to evaluate the difficulties defense counsel may have in meeting his professional responsibilities to a particular client in the absence of a claim that counsel was ineffective. We find no merit in this assignment of error.

### III.

The appellant's third and fourth assignments of error are also without merit. *See United States v. Weiss*, 36 M.J. 224 (C.M.A. 1992); *United States v. Graf*, 35 M.J. 450 (C.M.A.1992); *United States v. Coffman*, 35 M.J. 591 (N.M.C.M.R.1992) (per curiam).

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Chief Judge LARSON and Senior Judge STRICKLAND concur.